1  DENNIS L. KENNEDY
   Nevada Bar No. 1462
2  KELLY B. STOUT
   Nevada Bar No. 12105
3  PAUL C. WILLIAMS
   Nevada Bar No. 12524
4  BAILEY❖KENNEDY
   8984 Spanish Ridge Avenue
5  Las Vegas, Nevada 89148-1302
   Telephone Number: (702) 562-8820
6  Fax Number:  (702) 562-8821
   DKennedy@BaileyKennedy.com
7  KStout@BaileyKennedy.com
   PWillaims@BaileyKennedy.com
8
   GEORGE H. HAINES
9  Nevada Bar No. 9411
   DAVID H. KRIEGER
10 Nevada Bar No. 9086
   HAINES & KRIEGER
11 8985 South Eastern Avenue, Suite 130
   Henderson, Nevada 89123
12 Phone Number: 702-880-5554
   Fax Number: 702-385-5518
13 GHaines@hainesandkrieger.com
   DKrieger@hainesandkrieger.com
14
   *Attorneys for Plaintiffs*
15

16                  UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
17

18 PASQUAIL BATES, individually and on behalf of all
   others similarly situated; RONALD GRIDER,                 Docket No.:  2:13-cv-1731
   individually and on behalf of all others similarly
19 situated; ERIK W. WAHL, individually and on
   behalf of all others similarly situated; DILLYN
20 WARREN, individually and on behalf of all others
   similarly situated; JULIE WRIGHT, individually and        **COMPLAINT**
21 on behalf of all others similarly situated; SHARON         **JURY TRIAL DEMANDED**
   PRATT, individually and on behalf of all others
22 similarly situated;

23                        Plaintiffs,

24                          vs.

25 DOLLAR LOAN CENTER, LLC d/b/a DOLLAR LOAN
   CENTER D/B/A LOAN SHACK, a Nevada Limited
26 Liability Company; DLC EMPIRE, LLC d/b/a
   DOLLAR LOAN CENTER, a South Dakota Limited
27 Liability Company; CLARK COUNTY COLLECTION
   SERVICE, LLC, d/b/a CLARK COUNTY COLLECTION

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

SERVICE, a Nevada Limited Liability Company; CHECK CITY PARTNERSHIP, LLC d/b/a CHECK CITY, a Nevada Limited Liability Company; TOSH, INC. d/b/a TOSH OF UTAH, INC. d/b/a CHECK CITY CHECK CASHING d/b/a CHECK CITY, a Utah Corporation; CCI FINANCIAL, INC. d/b/a CHECKCITY.COM, a Utah Corporation; CASH 1. LLC d/b/a CASH 1, a Nevada Limited Liability Company.

Defendants.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

## I.   JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction because several claims arise out of violations of federal law.  28 USC § 1331; *see* 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. __, 132 S. Ct. 740, 753 (2012).

2.      This Court has "supplemental jurisdiction over all other claims [because they] are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

3.      Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b)-(c) because the Defendants are all subject to personal jurisdiction in, and are thus residents of Nevada.  *See* 28 U.S.C. § 1391(c)(2).

## II.   SUMMARY OF ACTION

4.      Plaintiffs bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants in negligently, knowingly, and/or willfully invading Plaintiffs' privacy by using an automatic telephone dialing system ("ATDS") to initiate a telephone call to Plaintiffs on their cellular telephones without prior express consent in violation of the Telephone Consumer Protection Act ("TCPA").

5.      Defendants are all involved in the business of high-interest, short-term loans (i.e. "payday loans").  On information and belief, Defendants' debt collection practices include collecting multiple "References" from borrowers under the false auspice that the contacts will only be contacted as a credit reference.  However, Defendants rarely, if ever, contact any of the References for the purposes of checking

on the borrower's creditworthiness.  Instead, Defendants gather the names and addresses of debtors' friends and family for the purpose of pursuing the borrower in the event that he or she defaults on the debt.

6.     Each Plaintiff was named by a friend or family member as a "reference" on his or her application for a payday loan.  On information and belief, when a borrower failed to make payments and the Defendants were unable to contact the borrowers, each of the Defendants used an ATDS—without regard to whether they were calling a number associated with a cellular phone or a landline—to contact the Plaintiffs in an attempt to locate the borrower and collect the debt.

7.     Defendants did not obtain Plaintiffs' consent to contact them on their cellular phones using an ATDS.

### III.   THE PARTIES

#### A.   Plaintiffs

8.     Plaintiff Pasquail Bates ("Ms. Bates") is, and at all times material hereto was, a resident of South Carolina.

9.     Plaintiff Ronald Grider ("Mr. Grider") is, and at all times material hereto was, a resident of Nevada.

10.    Plaintiff Erik W. Wahl ("Mr. Wahl") is, and at all times material hereto was, a resident of Nevada.

11.    Plaintiff Dillyn Warren ("Mr. Warren") is, and at all times material hereto was, a resident of Nevada.

12.    Plaintiff Julie Wright ("Ms. Wright") is, and at all times material hereto was, a resident of Nevada.

13.    Plaintiff Sharon Pratt ("Ms. Pratt") is, and all times material thereto was, a resident of Nevada.

#### B.   Defendants DLC Empire, LLC and Dollar Loan Center, LLC

14.    Dollar Loan Center, LLC ("DLC Nevada") is, and at all times material hereto was, a Nevada Limited Liability Company, whose primary corporate address and headquarters are in Las Vegas, Nevada.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

15.     DLC Empire, LLC ("DLC Empire") is, and at all times material hereto was, a South Dakota Limited Liability Company, whose primary corporate address and headquarters are in Sioux Falls, South Dakota.

16.     DLC Empire is registered with the Nevada Secretary of State as a foreign corporation authorized to do business in Nevada and, in fact, does substantial business in Nevada.

17.     DLC Nevada is licensed by the State of Nevada pursuant to NRS 604A.010 to 604A.940, inclusive, to provide deferred deposit loan services, high-interest loan services, title loan services, and check cashing services.

18.     On information and belief, DLC Nevada is primarily engaged in the business of providing consumers with high-interest, short-term loans (i.e. payday loans, title loans, personal loans).

19.     DLC Nevada and DLC Empire purport to be the largest provider of short-term credit services in Nevada.

20.     On information and belief, DLC does substantial business in Nevada, which includes operating more than thirty physical locations in Nevada and, in conjunction with other affiliated entities, operating the website, www.dontbebroke.com, which provides high-interest loans to Nevada residents.

21.     DLC Empire and DLC Nevada are jointly referred to as the "DLC Defendants."

22.     The DLC Defendants are, and at all times material hereto were, limited liability companies and "person[s]" pursuant to 47 U.S.C. § 153(39).

**C.  Defendant Clark County Collection Service ("CCCS")**

23.     Clark County Collection Service, LLC ("CCCS") is, and at all times material hereto was, a Nevada limited liability company, whose primary corporate address and headquarters are in Las Vegas, Nevada.

24.     On information and belief, CCCS's principle purpose is the collection of debts owed or due or asserted to be owed or due to another, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

25.     CCCS is a collection agency engaged in the collection of or in soliciting or obtaining in any manner the payment of a claim owed or due to be owed or due to another, and is licensed by the State of Nevada pursuant to NRS 649.075 to 649.167, inclusive.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

26.     CCCS is affiliated with DLC Empire and DLC Nevada, which are all part of a "corporate family . . . related by common ownership or control."

27.     On information and belief, CCCS does substantial business in Nevada at its Las Vegas headquarters, which is also its principal place of business.  Licensed in twelve states, it represents that it has been recognized as "one of America's top 500 fastest growing companies."

28.     CCCS is, and at all times material hereto was, a limited liability company and "person" pursuant to 47 U.S.C. § 153(39).

**D. Defendants Check City Partnership, LLC, CCI Financial, Inc., and Tosh, Inc.**

29.     Defendant Check City Partnership, LLC ("Check City Nevada") is, and at all times material hereto was, a Nevada limited liability company, whose primary corporate address and headquarters are in Provo, Utah.

30.     Defendant Tosh, Inc. ("Tosh") is, and at all times material hereto was, a Utah Corporation, whose primary corporate address and headquarters are in Provo, Utah.

31.     Defendant CCI Financial, Inc. ("CCI Financial") is, and at all times material hereto was, a Utah Corporation, whose primary corporate address and headquarters are in Provo, Utah.

32.     On information and belief, Check City Nevada, Tosh, and CCI Financial are all affiliated entities related by common ownership or control.

33.     On information and belief, Tosh is the parent company to Check City Nevada.

34.     Check City and Tosh are jointly referred to as the "Check City Defendants."

35.     On information and belief, Check City Nevada operates more than thirty Nevada stores in Las Vegas, North Las Vegas, Henderson, and Reno.

36.     Check City Nevada's physical locations are licensed by the State of Nevada pursuant to NRS 604A.010 to 604A.940, inclusive, to provide deferred deposit loan services, high-interest loan services, title loan services, and check cashing services.

37.     Tosh is registered with the Nevada Secretary of State as a foreign corporation authorized to do business in Nevada and, in fact, does substantial business in Nevada.

38.     On information and belief, the Check City Defendants do substantial business in Nevada.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

39.     The Check City Defendants are, and at all times material hereto were, limited liability companies and "person[s]" pursuant to 47 U.S.C. § 153(39).

**E.   Defendant Cash 1, LLC ("Cash 1")**

40.     On information and belief, Cash 1, LLC d/b/a Cash 1 ("Cash 1") is, and at all times material hereto was, a Nevada Limited Liability Company, whose primary corporate address and headquarters are in Reno, Nevada.

41.     Cash 1 is licensed by the State of Nevada pursuant to NRS 604A.010 to 604A.940, inclusive, to provide deferred deposit loan services, high-interest loan services, title loan services, and check cashing services.

42.     On information and belief, Cash 1 is primarily engaged in the business of providing consumers with high-interest, short-term loans (i.e. payday loans, title loans, personal loans).

43.     Cash 1 operates seven licensed locations in Nevada—six in Las Vegas and one in Reno—and eleven locations in Arizona.

44.     Cash 1 also provides loans via telephone.

45.     On information and belief, Cash 1 does substantial business in Nevada.

46.     Cash 1 is, and at all times material hereto was, a limited liability company and "person" pursuant to 47 U.S.C. § 153(39).

**IV.   THE TCPA**

47.     In 1991, Congress enacted the TCPA in response to "[v]oluminous consumer complaints about abuses of telephone technology . . . ." *Mims*, 132 S. Ct. at 744.

48.     Congress found that automated calls were "an invasion of privacy." *Id.* at 745 (quoting Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394 (1991)).

49.     Among other provisions, the TCPA regulates the use of automated telephone dialing systems as defined in 47 U.S.C. §227(a)(1).  Specifically, the TCPA prohibits "mak[ing] any call . . . using an [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service" unless the call is "made for emergency purposes or made with the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A)(iii) (2006).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

## V. FACTUAL ALLEGATIONS

### A.  DLC and CCC's Business Practices

50.     DLC Nevada represents that it is the "#1 Community Short-Term Lender in . . . Nevada . . . ." and "promise[s] to follow the law", including "all applicable Federal and State laws and regulations in Nevada . . . ."

51.     The DLC Defendants are part of a "family of companies doing business as Dollar Loan Center."

52.     The service mark "Dollar Loan Center" is registered to DLC Nevada with the Nevada Secretary of State.

53.     On information and belief, DLC Nevada and DLC Empire are affiliated entities that are part of a "corporate family . . . related by common ownership or control."

54.     On information and belief, DLC Empire is the parent company of DLC Nevada.

55.     On information and belief, the DLC Defendants and their other affiliated entities, do business in four states, but its "home base is in Las Vegas, Nevada, where DLC employs approximately 250 people."

56.     On information and belief, the DLC Defendants and their other affiliated entities all do business through the same website, www.dontbebroke.com.

57.     DLC Nevada owns the trademark "dontbebroke", which is registered with the United States Patent and Trademark Office.

58.     On information and belief, DLC Empire performs a large number of administrative and business services for DLC Nevada, including, but not limited to, accounting, bookkeeping, compliance, facilities maintenance, security, and human resources.

59.     On information and belief, DLC Empire drafts, creates, or otherwise controls, at least in part, the representations DLC makes in written materials, including, but not limited to loan applications, advertisements, and the common website, dontbebroke.com.

60.     On information and belief, DLC Empire employs one or more persons as a Compliance Manager who "oversees adherence of Dollar Loan Center . . . policies and procedures to Federal and State laws and regulations."   The Compliance Manager also "examines company policies, procedures and

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

practices to ensure compliance with laws and regulations. . . . organize and develop training manuals, testing and evaluation procedures for all employees and operations" of Dollar Loan Center, which includes DLC Nevada.

61.     DLC Empire's responsibility for compliance procedures renders it liable for the actions of DLC Nevada's employees and agents with respect to actions that violate state and federal laws and regulations.

62.     When a borrower applies for a loan from DLC, he or she fills out an application (the "DLC Application") either online or in-store at one of its physical locations.

63.     The DLC Application requires each prospective borrower to provide contact information for five References.

64.     The in-store DLC Loan Application requests only one category of contact information for each Reference—a phone number.  It does not request the Reference's entire mailing address.

65.     The DLC Application does not ask the borrower to indicate whether the Reference's telephone number is for a landline phone or a cellular phone.

66.     The in-store DLC Application requires the borrower to "certify that the information provided is true and complete to the best of [the prospective borrower's] knowledge" and grant "permission to verify the above information for a credit decision based on verified information, which may include contacting employers, relatives, bank references, and obtaining credit reports."

67.     The online DLC Application requires the prospective borrower to "certify that the information provided on [the DLC Application] is true and complete to the best of [the prospective borrower's] knowledge" and grant "permission to verify the information such as contacting employers, relatives . . . to verify that information *for the purposes of securing credit* from [DLC]."  (emphasis added).

68.     DLC Nevada represents that it generally processes a loan for first-time customers in thirty minutes or less.

69.     Neither the in-store nor the online DLC Application informs the prospective borrower that the References' contact information will be used for collections purposes.

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

70.     On information and belief, DLC Nevada rarely contacts a prospective borrower's References "***for the purposes of securing credit***" (i.e., to verify the information on the DLC Application).  Instead, DLC Nevada requests telephone numbers for References with the intent to harass a borrower's friends and family if the borrower defaults on his or her loan.

71.     On information and belief, when a borrower defaults on a loan, DLC Nevada's employees make initial attempts to collect on the loan.

72.     On information and belief, when DLC Nevada is not successful in collecting on delinquent accounts, it refers the loan to CCCS for collection.

73.     Acting as DLC's agent, CCCS attempts to collect money owed to DLC Nevada.

74.     CCCS advertises its "[e]xpertise with all Federal and State debt collection regulations."

75.     On information and belief, DLC Nevada, CCCS, and/or their agents contact the References of a delinquent borrower at the phone number the borrower provided on his or her DLC Loan Application.

76.     The DLC Defendants' website contains a "Detailed Wireless Policy" under the heading "Legal Stuff."  The Detailed Wireless Policy states, in pertinent part:

> You agree and consent to be contacted by the Company, Our agents, employees, attorneys, affiliates, subsequent creditors, loan servicing companies, and third-party collectors through the use of email, and/or telephone calls and/or SMS text messages to your cellular, home or work phone numbers, as well as any other phone number you have provided in conjunction with this loan, including the use of ***automatic telephone dialing systems, autodialers***, or an artificial or prerecorded voice.

(emphasis added.)

77.     On information and belief, both DLC Nevada and CCCS use an ATDS to call a borrower's References when the account becomes delinquent.

78.     On information and belief, CCCS purposely recruits debt collectors that have experience with autodialers.

79.     On information and belief, CCCS advertises that is uses a software program called "Flexible Automated Collection System" ("FACS"), which it describes as the "most advanced software in the collection industry."

80.     On information and belief, DLC Nevada does not obtain the References' consent before using an ATDS to call their cellular phone numbers.

81.     On information and belief, DLC Nevada does not call the References for emergency purposes.

82.     On information and belief, CCCS uses an ATDS to contact third parties (parties other than the borrower) in the course of collecting debts on behalf of DLC Nevada and its other customers, which are not affiliated with DLC Nevada.

83.     On information and belief, CCCS does not obtain the consent of third parties to use an ATDS to call their cellular phones.

84.     All calls made by DLC Nevada and CCCS that are the subject of this Complaint occurred within the four years of the date this Complaint was filed.

**B.  Ms. Bates Receives Numerous Telephone Calls from DLC and/or CCCS**

85.     On or about November 2012 through December 2012, Pasquail Bates ("Ms. Bates") received numerous telephone calls on her cellular telephone from an individual purporting to call on behalf of DLC Nevada regarding the debt of her cousin, Demaurio Stewart.

86.     Ms. Bates advised DLC Nevada and/or CCCS that she did not want to be contacted again.

87.     Despite her express request that DLC Nevada and CCCS cease contact, they continued to call her.

88.     On information and belief, DLC Nevada and/or CCCS used an ATDS to call Ms. Bates' cellular telephone.

89.     At no time did Ms. Bates provide DLC Nevada and/or CCCS with her cellular phone number or her consent to use an ATDS calling her cellular phone number.

90.     DLC Nevada and/or CCCS did not call Ms. Bates for emergency purposes.

**C.  Mr. Grider Receives Numerous Telephone Calls from DLC and/or CCCS**

91.     On or about May 2013 through June 2013, Ronald Grider ("Mr. Grider") received numerous telephone calls on his cellular telephone from an individual purporting to call on behalf of DLC regarding the debt of Mr. Grider's friend, Walter Aviles.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

92.     On information and belief, DLC Nevada and/or CCCS used an ATDS to call Mr. Grider's cellular telephone.

93.     At no time did Mr. Grider provide DLC Nevada and/or CCCS with his cellular phone number or his consent to use an ATDS calling his cellular phone number.

94.     DLC Nevada and/or CCCS did not call Mr. Grider for emergency purposes.

**D.  Mr. Wahl Receives Numerous Telephone Calls from DLC and/or CCCS**

95.     On March 13, 2013, Erik W. Wahl ("Mr. Wahl") received a telephone call on his cellular telephone from individuals purporting to call on behalf of DLC Nevada regarding the debt of Mr. Wahl's mother, Jan Wahl.

96.     On information and belief, DLC Nevada and/or CCCS used an ATDS to call Mr. Wahl's cellular telephone.

97.     At no time did Mr. Wahl provide DLC Nevada and/or CCCS with his cellular phone number or his consent to use an ATDS calling his cellular phone number.

98.     DLC Nevada and/or CCCS did not call Mr. Wahl for emergency purposes.

**E.  Check City's Business Practices**

99.     On information and belief, Check City's primary business function is providing short-term high interest loans to individual consumers.

100.    On information and belief, Tosh is the parent company of both CCI Financial and Check City Nevada.

101.    On information and belief, Tosh is involved with the day-to-day governance of CCI Financial and Check City Nevada performs, and provides administrative and business services for Check City, including, but not limited to, accounting, bookkeeping, facilities maintenance, security, and human resources.

102.    On information and belief, CCI Financial is the sole owner of the website Checkcity.com, which directly provides on-line loans to Nevada residents.

103.    Tosh is the owner of the trademarks "Checkcity.com," "Check City," "Check City Loan Center," and the Check City logo.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

104.     Check City's Responsible Lending Statement includes a section titled "We Follow the Law" and states that it complies with all Federal and State laws and regulations.

105.     When a prospective borrower applies for a loan from the Check City Defendants, he or she must fill out an application (the "Check City Application").

106.     The Check City Application requires each prospective borrower to provide contact information for two or three friends and family members. Specifically, the Check City Application seeks the contact information of a "Relative (Not Living With [the Prospective Borrower])," a "Personal Reference (Not Living With [the Prospective Borrower])," and another "Personal Reference" if the prospective borrower is "applying for an Auto Title Loan or Signature Loan, or if specifically requested by a Check City representative."

107.     The Check City Application does not ask the borrower to indicate whether the Reference's telephone number is for a landline phone or a cellular phone.

108.     The Check City Application also requires prospective borrowers to acknowledge that the Check City Defendants may "verify the truthfulness of the information [the prospective borrower] provided on this application by contacting third parties, ***including the references listed above***."

109.     Conversely, the Check City Application also contains a provision authorizing Check City to contact third parties regarding a borrower's debt, but the provision does not mention the borrower's References.

110.     The Check City Application also contains a provision authorizing "robocalls" to the prospective borrower (the "Check City ATDS Provision"), which states, in pertinent part:

> **\*\*Transaction Robocalls (Including SMS Text Messages) to Your Cellular Phone**. Receipt of cellular phone calls (including text messages) may be subject to charges from your service provider. If you have listed a cell phone above or you give us an updated cell phone number, then you authorize us to call (including sending SMS text messages) using an ***automatic telephone dialing system*** or prerecorded message to your cell phone number to provide account information and services, such as when your transaction is approved, payment reminders or collection efforts.

(second emphasis added).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

111.    On information and belief, when a borrower defaults on a loan, the Check City Defendants attempt to collect the debt.

112.    On information and belief, the Check City Defendants place telephone calls to the borrower's References if the borrower defaults on his or her loan.

113.    On information and belief, the Check City Defendants use an ATDS to call the References.

114.    On information and belief, the Check City Defendants do not obtain the References' consent to use an ATDS to call their cellular phone numbers.

115.    On information and belief, the calls to the References' cellular phones from the Check City Defendants are not for emergency purposes.

116.    All calls made by the Check City Defendants that are the subject of this Complaint occurred within the four years before this Complaint was filed.

**F.  Mr. Warren Receives a Telephone Call from Check City**

117.    On or about the time period spanning November 2012 through December 2012, Mr. Warren received numerous calls on his cellular telephone from an individual purporting to call on behalf of the Check City Defendants regarding his friend, Danielle Iorio.

118.    On information and belief, the Check City Defendants used an ATDS to call Mr. Warren's cellular telephone.

119.    At no time did Mr. Warren provide the Check City Defendants with his cellular phone number or his consent to use an ATDS to call his cellular phone number.

120.    The Check City Defendants did not call Mr. Warren for emergency purposes.

**G.  Ms. Wright Receives a Telephone Call from Check City**

121.    On or about August 1, 2013, Ms. Wright received a telephone call to her cellular telephone from an individual purporting to call on behalf of the Check City Defendants regarding her friend, Cassie Castillo.

122.    On information and belief, the Check City Defendants used an ATDS to call Ms. Wright on her cellular telephone.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

123.   At no time did Ms. Wright provide the Check City Defendants with her cellular phone number or her consent to use an ATDS to call her cellular phone number.

124.   The Check City Defendants did not call Ms. Wright for emergency purposes.

### H.   Cash 1, Inc.

125.   On information and belief, Cash 1 is primarily in the business of providing short-term, high interest loans to individual consumers.

126.   When a prospective borrower applies for a loan from the Check City Defendants, he or she must fill out an application (the "Cash 1 Application") at a Cash 1 store.

127.   The Cash 1 Application requires each prospective borrower to provide contact information for three References.

128.   On information and belief, the Cash 1 Application requires prospective borrowers to provide contact information for three References.  Specifically, it requires contact information for two family members and a friend (or three family members).

129.   On information and belief, the Cash 1 Application includes a space for each Reference's mailing address, but does not require that a prospective borrower include that information.

130.   On information and belief, the Cash 1 Application includes a space for each Reference's telephone number and will not approve a loan without the names of at least three References that can be verified.

131.   The Cash 1 Application does not ask the borrower to indicate whether the Reference's telephone number is for a landline phone or a cellular phone.

132.   On information and belief, Cash 1 does not generally contact References for the purpose of verifying information in the application or determining the prospective borrower's credit-worthiness. Rather, Cash 1 only verifies the References' identity and phone number for the purpose of harassing the References if the borrower defaults on the loan payment.

133.   By signing the Cash 1 Application, the prospective borrower "acknowledge[s] and attest[s] that all the information furnished [on the Cash 1 Application] is true, correct, and complete."  The Cash 1

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

1  Application also includes the following statement:  "Knowingly making a false statement on a credit

2  application is a crime."

3      134.   On information and belief, when a borrower defaults on a loan, Cash 1 or its agents attempts

4  to collect on the loan.

5      135.    On information and belief, Cash 1 or its agents contacts the References provided by a

6  delinquent borrower at the phone number the borrower provided on his or her Cash 1 Loan Application.

7      136.   On information and belief, Cash 1 uses an ATDS to call a borrower's References if the

8  account becomes delinquent.

9      137.   On information and belief, Cash 1 and its agents do not obtain the References' consents

10  before using an ATDS to call their cellular phone numbers.

11      138.   On information and belief, Cash 1 and its agents do not call the References for emergency

12  purposes.

13      139.   All calls made by Cash 1 and its agents that are the subject of this Complaint occurred within

14  the four years of the date this Complaint was filed.

15              **H.  Ms. Pratt Receives a Telephone Call from Cash 1**

16      140.   In January 2013, Sharon Pratt ("Ms. Pratt") received numerous telephone calls on her cellular

17  telephone from an individual purporting to call on behalf of Cash 1 regarding the debt of her friend, Latoya

18  Johnson.

19      141.   Ms. Pratt advised Cash 1 that she did not want to be contacted again.

20      142.   Cash 1's representative advised Ms. Pratt that the calls to Ms. Pratt's cellular telephone

21  would continue until Ms. Johnson repaid her debt.

22      143.   Despite her express request that Cash 1 cease all contact, Cash 1 continued to call her cellular

23  telephone.

24      144.   On information and belief, Cash 1 used an ATDS to call Ms. Pratt's cellular telephone.

25      145.   Cash 1 did not call Ms. Pratt for emergency purposes.

1

## VI.   CLASS ACTION ALLEGATIONS

2

**A.  DLC Class Representatives  - Ms. Bates, Mr. Grider, and Mr. Wahl v. the DLC Defendants**

3      146.    Ms. Bates, Mr. Grider, and Mr. Wahl (collectively, the "DLC Class Representatives") bring

4  this action on behalf of themselves and on behalf of all other persons similarly situated (the "DLC Class").

5      147.    The DLC Class Representatives propose the following definition for the DLC Class subject to

6  amendment as appropriate:

7         All persons within the United States who, on or after September 20, 2009,
          received a non-emergency telephone call from the DLC Defendants to a
8         cellular telephone:

9            1.   That was placed using an automatic telephone dialing system or an
                  artificial or prerecorded voice;
10

11           2.   Regarding a borrower other than the recipient of the call; and

12           3.   Who did not provide prior express consent for such calls.

13        Collectively, all these persons will be referred to as the "DLC Class
          Members."  The DLC Class Representatives represent, and are members of,
          the DLC Class.
14

15        Excluded from the DLC Class are the DLC Defendants and any entities in
          which the DLC Defendants have a controlling interest, the DLC Defendants'
          agents and employees, the Judge to whom this action is assigned and any
16        member of the Judge's staff and immediate family, and claims for personal
          injury, and/or emotional distress.
17

18      148.    The DLC Class Representatives do not know the exact number of members in the DLC Class,

19  but based upon the number of DLC Nevada's  locations and the DLC Defendants' representations as to their

20  market share, Plaintiffs reasonably believe that Class members number over ten thousand (10,000).

21      149.    The DLC Class Representatives and all members of the DLC Class have been harmed by the

22  acts of the DLC Defendants.

23      150.    This Class Action Complaint seeks money damages and injunctive relief.

24      151.    The joinder of all DLC Class Members is impracticable due to the size and relatively modest

25  value of each individual claim.  The disposition of the claims in a class action will provide substantial

26  benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The Class can be identified

27  easily through records maintained by the DLC Defendants.

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

152.    There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual DLC Class Members. Those common questions of law and fact include, but are not limited to, the following:

a.    Whether, beginning on September 20, 2009, the DLC Defendants made non-emergency calls to the DLC Class Representatives' and the DLC Class Members' cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

b.    Whether the DLC Defendants can meet its burden of showing it obtained prior express consent (i.e., consent that is clearly and unmistakably stated) to make such calls;

c.    Whether the DLC Defendants' conduct was knowing and/or willful;

d.    Whether the DLC Defendants engaged in deceptive trade practices by: (i) knowingly making false representations in its transactions with borrowers that their "references" would be contacted as a credit reference, when, in reality, the DLC Defendants would only contact the "references" if the borrower defaulted on his or her loan; (ii) failing to disclose a material fact in connection with the lending of money to borrowers by failing to disclose that the DLC Defendants would contact the borrower's "references" if the borrower defaulted on his or her loan; or (iii) by violating the TCPA by contacting the DLC Class Members on their cellular telephones using an ATDS without their prior express consent. *See* NRS 598.0915(15), 598.0923(2)-(3).

e.    Whether the DLC Defendants are liable for damages and the amount of such damages; and

f.    Whether the DLC Defendants should be enjoined from engaging in such conduct in the future.

153.    As individuals who received numerous and repeated telephone calls using an ATDS without their prior express consent within the meaning of the TCPA, the DLC Class Representatives assert claims that are typical of each DLC Class Member.  The DLC Class Representatives will fairly and adequately represent and protect the interests of the DLC Class, and they have no interests which are contrary to the interests of any of the DLC Class Members.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

154.    The DLC Class Representatives have retained counsel experienced in handling class action claims involving violations of Federal and State consumer protection laws such as the TCPA.

155.    A class action is the superior method for the fair and efficient adjudication of this controversy.  Class-wide relief is essential to compel the DLC Defendants to comply with the TCPA and the Nevada Deceptive Trade Practices Act.  The interest of the DLC Class Members in individually controlling the prosecution of separate claims against the DLC Defendants are small because the statutory damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the DLC Class Members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

156.    The DLC Defendants have acted on grounds generally applicable to the DLC Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the DLC Class as a whole appropriate.  Moreover, on information and belief, the DLC Class Representatives allege that the TCPA and the Nevada Deceptive Trade Practices Act violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**B.   CCCS Class Representatives – Ms. Bates, Mr. Grider, and Mr. Wahl v. CCCS**

157.    Ms. Bates, Mr. Grider, and Mr. Wahl (collectively, the "CCCS Class Representatives") bring this action on behalf of themselves and on behalf of all other persons similarly situated (the "CCCS Class").

158.    The CCCS Class Representatives propose the following definition for the CCCS Class, subject to amendment as appropriate:

All persons within the United States who, on or after September 20, 2009, received a non-emergency telephone call from CCCS to a cellular telephone:

1.   That was placed using an automatic telephone dialing system or an artificial or prerecorded voice;

2.   Regarding a debtor other than the recipient of the call; and

3.   Who did not provide prior express consent for such calls.

Collectively, all these persons will be referred to as the "CCCS Class Members." The CCCS Class Representatives represent, and are members of, the CCCS Class.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

> Excluded from the CCCS Class are CCCS and any entities in which CCCS has a controlling interest, CCCS's agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, and/or emotional distress.

159.    The DLC Class Representatives do not know the exact number of members in the CCCS Class, but based upon the number of CCCS locations and CCCS's representations as to their market share, Plaintiff reasonably believes that Class members number over ten thousand (10,000).

160.    The CCCS Class Representatives and all members of the CCCS Class have been harmed by the acts of DLC.

161.    This Class Action Complaint seeks money damages and injunctive relief.

162.    The joinder of all CCCS Class Members is impracticable due to the size and relatively modest value of each individual claim.  The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The Class can be identified easily through records maintained by CCCS.

163.    There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual DLC Class Members. Those common questions of law and fact include, but are not limited to, the following:

    a.    Whether, beginning on September 20, 2009, CCCS made non-emergency calls to the DLC Class Representatives' and the DLC Class Members' cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

    b.    Whether CCCS can meet its burden of showing it obtained prior express consent (i.e., consent that is clearly and unmistakably stated), to make such calls;

    c.    Whether CCCS's conduct was knowing and/or willful;

    d.    Whether CCCS engaged in deceptive trade practices by violating the TCPA by contacting the CCCS Class Members on their cellular telephones using an ATDS without their prior express consent.  *See* NRS 598.0915(15), 598.0923(2)-(3).

    e.    Whether CCCS is liable for damages, and the amount of such damages; and

    f.    Whether CCCS should be enjoined from engaging in such conduct in the future.

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

164.    As individuals who received numerous and repeated telephone calls using an ATDS without their prior express consent within the meaning of the TCPA, the CCCS Class Representatives assert claims that are typical of each CCCS Class Member.  The CCCS Class Representatives will fairly and adequately represent and protect the interests of the CCCS Class, and they have no interests which are contrary to the interests of any of the CCCS Class Members.

165.    The CCCS Class Representatives have retained counsel experienced in handling class action claims involving violations of Federal and State consumer protection laws such as the TCPA.

166.    A class action is the superior method for the fair and efficient adjudication of this controversy.  Class-wide relief is essential to compel CCCS to comply with the TCPA and the Nevada Deceptive Trade Practices Act.  The interest of the CCCS Class Members in individually controlling the prosecution of separate claims against CCCS is small because the statutory damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the CCCS Class Members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

167.    CCCS has acted on grounds generally applicable to the CCCS Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the CCCS Class as a whole appropriate. Moreover, on information and belief, the CCCS Class Representatives allege that the TCPA and the Nevada Deceptive Trade Practices Act violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**C.  Check City Class Representatives – Mr. Warren and Ms. Wright v. the Check City Defendants**

168.    Mr. Warren and Ms. Wright (the "Check City Class Representatives") bring this action on behalf of themselves and on behalf of all other persons similarly situated (the "Check City Class").

169.    The Check City Class Representatives propose the following definition for the Check City Class, subject to amendment as appropriate:

> All persons within the United States who, on or after September 20, 2009, received a non-emergency telephone call from the Check City Defendants to a cellular telephone:

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

1. That was placed using an automatic telephone dialing system or an artificial or prerecorded voice;

2. Regarding a borrower other than the recipient of the call; and

3. Who did not provide prior express consent for such calls.

Collectively, all these persons will be referred to as the "Check City Class Members." The Check City Class Representatives represent, and are members of, the Check City Class.

Excluded from the Check City Class are the Check City Defendants and any entities in which the Check City Defendants have a controlling interest, the Check City Defendants' agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, and/or emotional distress.

170. The Check City Class Representatives do not know the exact number of members in the Check City Class, but based upon the number of Check City locations and the Check City Defendants' representations as to their market share, the Check City Class Representatives reasonably believe that Class members number over ten thousand (10,000).

171. The Check City Class Representatives and all members of the Check City Class have been harmed by the acts of the Check City Defendants.

172. This Class Action Complaint seeks money damages and injunctive relief.

173. The joinder of all Check City Class Members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by the Check City Defendants.

174. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual Check City Class Members. Those common questions of law and fact include, but are not limited to, the following:

a. Whether, beginning on September 20, 2009, the Check City Defendants made non-emergency calls to the Check City Class Representatives and the Check City Class

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

Members' cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

b.   Whether the Check City Defendants can meet their burden of showing they obtained prior express consent (i.e., consent that is clearly and unmistakably stated) to make such calls;

c.   Whether the Check City Defendants' conduct was knowing and/or willful;

d.   Whether the Check City Defendants engaged in deceptive trade practices by: (i) knowingly making false representations in their transactions with borrowers that their "references" would be contacted as a credit reference, when, in reality, the Check City Defendants would only contact the "references" if the borrower defaulted on his or her loan; (ii) failing to disclose a material fact in connection with the lending of money to borrowers by failing to disclose that they would contact the borrower's "references" if the borrower defaulted on his or her loan; or (iii) by violating the TCPA by contacting the DLC Class Members on their cellular telephones using an ATDS without their prior express consent. *See* NRS 598.0915(15), 598.0923(2)-(3).

e.   Whether the Check City Defendants are liable for damages, and the amount of such damages; and

f.   Whether the Check City Defendants should be enjoined from engaging in such conduct in the future.

175.   As individuals who received numerous and repeated telephone calls using an ATDS without their prior express consent within the meaning of the TCPA, the Check City Class Representatives assert claims that are typical of each Check City Class Member. The Check City Class Representatives will fairly and adequately represent and protect the interests of the Check City Class, and they have no interests which are contrary to the interests of any of the Check City Class Members.

176.   The Check City Class Representatives have retained counsel experienced in handling class action claims involving violations of Federal and State consumer protection laws such as the TCPA and the Nevada Deceptive Trade Practices Act.

177.   A class action is the superior method for the fair and efficient adjudication of this controversy.  Class-wide relief is essential to compel the Check City Defendants to comply with the TCPA and the Nevada Deceptive Trade Practices Act.   The interest of the Check City Class Members in individually controlling the prosecution of separate claims against the Check City Defendants is small because the statutory damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Check City Class Members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

178.   The Check City Defendants have acted in a manner generally applicable to the Check City Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Check City Class as a whole appropriate.  Moreover, on information and belief, the Check City Class Representative allege that the TCPA and the Nevada Deceptive Trade Practices Act violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

### D.  Cash 1 Class Representative - Ms. Pratt v. Cash 1

179.   Ms. Pratt (the "Cash 1 Class Representative") brings this action on behalf of herself and on behalf of all other persons similarly situated (the "Cash 1 Class").

180.   The Cash 1 Class Representative proposes the following definition for the Cash 1 Class, subject to amendment as appropriate:

> All persons within the United States who, on or after September 20, 2009, received a non-emergency telephone call from Cash 1 to a cellular telephone:
>
> 1.  That was placed using an automatic telephone dialing system or an artificial or prerecorded voice;
>
> 2.  Regarding a borrower other than the recipient of the call; and
>
> 3.  Who did not provide prior express consent for such calls.
>
> Collectively, all these persons will be referred to as the "Cash 1 Class Members."  The Cash 1 Class Representative represents, and is a member of, the Cash 1 Class.
>
> Excluded from the Cash 1 Class are Cash 1 and any entities in which Cash 1 has a controlling interest, Cash 1's agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, and/or emotional distress.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

181.    The Cash 1 Class Representative does not know the exact number of members in the Cash 1 Class, but based upon the number of Cash 1's locations, Plaintiff reasonably believes that Class members number over two thousand (2,000).

182.    The Cash 1 Class Representative and all members of the Cash 1 Class have been harmed by the acts of Cash 1.

183.    This Class Action Complaint seeks money damages and injunctive relief.

184.    The joinder of all Cash 1 Class Members is impracticable due to the size and relatively modest value of each individual claim.  The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The Class can be identified easily through records maintained by Cash 1.

185.    There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions, which may affect individual Cash 1 Class Members. Those common questions of law and fact include, but are not limited to, the following:

a.  Whether, beginning on September 20, 2009, Cash 1 made non-emergency calls to the Cash 1 Class Representative and the Cash 1 Class Members' cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

b.  Whether Cash 1 can meet its burden of showing it obtained prior express consent (i.e., consent that is clearly and unmistakably stated), to make such calls;

c.  Whether Cash 1's conduct was knowing and/or willful;

d.  Whether Cash 1 engaged in deceptive trade practices by: (i) knowingly making false representations in its transactions with borrowers that their "references" would be contacted as a credit reference, when, in reality, Cash 1 would only contact the "references" if the borrower defaulted on his or her loan; (ii) failing to disclose a material fact in connection with the lending of money to borrowers by failing to disclose that Cash 1 would contact the borrower's "references" if the borrower defaulted on his or her loan; or (iii) by violating the

1          TCPA by contacting the Cash 1 Class Members on their cellular telephones using an ATDS

2          without their prior express consent. *See* NRS 598.0915(15), 598.0923(2)-(3).

3         e.   Whether Cash 1 is liable for damages, and the amount of such damages; and

4         f.   Whether Cash 1 should be enjoined from engaging in such conduct in the future.

5       186.   As individuals who received numerous and repeated telephone calls using an ATDS without

6 their prior express consent within the meaning of the TCPA, the Cash 1 Class Representative asserts claims

7 that are typical of each Cash 1 Class Member. The Cash 1 Class Representative will fairly and adequately

8 represent and protect the interests of the Cash 1 Class, and has no interests which are contrary to the interests

9 of any of the Cash 1 Class Members.

10      187.   The Cash 1 Class Representative has retained counsel experienced in handling class action

11 claims involving violations of Federal and State consumer protection laws such as the TCPA.

12      188.   A class action is the superior method for the fair and efficient adjudication of this

13 controversy. Class-wide relief is essential to compel Cash 1 to comply with the TCPA and the Nevada

14 Deceptive Trade Practices Act. The interest of the Cash 1 Class Members in individually controlling the

15 prosecution of separate claims against Cash 1 are small because the statutory damages in an individual

16 action for violation of the TCPA are small. Management of these claims is likely to present significantly

17 fewer difficulties than are presented in many class claims because the calls at issue are all automated and the

18 Cash 1 Class Members, by definition, did not provide the prior express consent required under the statute to

19 authorize calls to their cellular telephones.

20      189.   Cash 1 has acted on grounds generally applicable to the Cash 1 Class, thereby making final

21 injunctive relief and corresponding declaratory relief with respect to the Cash 1 Class as a whole

22 appropriate. Moreover, on information and belief, the Cash 1 Class Representative alleges that the TCPA

23 and the Nevada Deceptive Trade Practices Act violations complained of herein are substantially likely to

24 continue in the future if an injunction is not entered.

25

26

27

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

# VII.   CAUSES OF ACTION

## First Cause of Action

### (Negligent Violation of the TCPA; DLC Class Members v. DLC Defendants)

190.   The DLC Class Representatives reallege and incorporate by reference the averments contained in Paragraphs 1 through 189, inclusive, as though fully set forth herein.

191.   The DLC Defendants used an ATDS to call each of the DLC Class Representatives and Class Members on their cellular telephones, without obtaining the express consent of the DLC Class Representatives and Class Members, in violation of the TCPA.

192.   As a result of the DLC Defendants' negligent violations of the TCPA, the DLC Class Representatives and Class Members are entitled to an award of five hundred dollars ($500.00) in statutory damages for each and every call in violation of the TCPA.  47 U.S.C. § 227(b)(3).

193.   The DLC Class Representatives and Class Members are entitled to injunctive relief prohibiting the DLC Defendants from continuing to violate the TCPA in the future.

## Second Cause of Action

### (Knowing/Willful Violation of the TCPA; DLC Class Members v. DLC Defendants)

194.   The DLC Class Representatives reallege and incorporate by reference the averments contained in Paragraphs 1 through 194, inclusive, as though fully set forth herein.

195.   The "Dollar Loan Center Responsible Lending Bill of Rights" promises that the DLC Defendants will "respect your privacy" and "adhere to applicable Federal and State privacy laws."[1]

196.   Notwithstanding their promise, the DLC Defendants used an ATDS to call each of the DLC Class Representatives and Class Members on their cellular telephones, without obtaining the express consent of the DLC Class Representatives and Class Members, in violation of the TCPA.

197.   As a result of the DLC Defendants' knowing or willful violations of the TCPA, the DLC Class Representatives and Class Members are entitled to an award of up to one thousand five hundred

---

[1]   http://www.dontbebroke.com/nevada (Click on the "Responsible Lending Bill of Rights")

1  dollars ($1500.00) in statutory damages for each and every call in violation of the TCPA.  *See* 47 U.S.C. §

2  227(b)(3).

3     198.    The DLC Class Representatives and Class Members are entitled to injunctive relief

4  prohibiting the DLC Defendants from continuing to violate the TCPA in the future.

5  **Third Cause of Action**

6  **(NRS 41.600(2)(e) – Deceptive Trade Practices; DLC Class Members v. DLC Defendants)**

7     199.    The DLC Class Representatives reallege and incorporate by reference the averments

8  contained in Paragraphs 1 through 198, inclusive, as though fully set forth herein.

9     200.    The DLC Defendants willfully committed an act of consumer fraud by:

10     a.    Knowingly making false representations in transactions to borrowers that "references" will

11        be contacted for a credit reference, when, in reality, the DLC Defendants would only contact

12        the "references" if the borrower defaulted on his or her loan.  *See* NRS 598.0915(15).

13     b.    Failing to disclose a material fact in connection with the lending of money to borrowers by

14        failing to disclose that the DLC Defendants would contact the borrower's "references" if the

15        borrower defaulted on his or her loan.  NRS 598.0923(2).

16     c.    Violating the TCPA by contacting the DLC Class Members on their cellular telephones

17        using an ATDS without their prior express consent.  *See* NRS 598.0923(2).

18     201.    The DLC Defendants' acts of consumer fraud caused the DLC Class Representatives and

19  Class Members to suffer damage by invading their privacy and causing them incur additional cellular phone

20  charges and/or lose allotted cellular phone minutes.  *See* NRS 41.600(3)(a).

21     202.    The DLC Class Representatives and Class Members are entitled to injunctive relief

22  prohibiting the DLC Defendants from continuing to violate the Nevada Deceptive Trade Practices Act in the

23  future.  *See* NRS 41.600(3)(b).

24     203.    The DLC Class Representatives and Class Members are entitled to attorneys' fees and costs.

25  *See* NRS 41.600(3)(c).

26

27

**Fourth Cause of Action**

**(Negligent Violation of the TCPA; CCCS Class Members v. CCCS)**

204.    The CCCS Class Representatives reallege and incorporate by reference the averments contained in Paragraphs 1 through 203, inclusive, as though fully set forth herein.

205.    CCCS used an ATDS to call each of the CCCS Class Representatives and Class Members on their cellular telephones, without obtaining the express consent of the CCCS Class Representatives and Class Members, in violation of the TCPA.

206.    As a result of CCCS's negligent violations of the TCPA, the CCCS Class Representatives and Class Members are entitled to an award of five hundred dollars ($500.00) in statutory damages for each and every call in violation of the TCPA.  47 U.S.C. § 227(b)(3).

207.    The CCCS Class Representatives and Class Members are entitled to injunctive relief prohibiting CCCS from continuing to violate the TCPA in the future.

**Fifth Cause of Action**

**(Knowing/Willful Violation of the TCPA; CCCS Class Members v.  CCCS)**

208.    The CCCS Class Representatives reallege and incorporate by reference the averments contained in Paragraphs 1 through 207, inclusive, as though fully set forth herein.

209.    CCCS advertises its "[e]xpertise with all Federal and State debt collection regulations."

210.    Notwithstanding their expertise and knowledge, CCCS used an ATDS to call each of the CCCS Class Representatives and Class Members on their cellular telephones, without obtaining the express consent of the CCCS Class Representatives and Class Members, in violation of the TCPA.

211.    As a result of CCCS's knowing or willful violations of the TCPA, the CCCS Class Representatives and the CCCS Class Members are entitled to an award of up to one thousand five hundred dollars ($1500.00) in statutory damages for each and every call in violation of the TCPA.  *See* 47 U.S.C. § 227(b)(3).

212.    CCCS Class Representatives and Class Members are entitled to injunctive relief prohibiting CCCS from continuing to violate the TCPA in the future.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

**Sixth Cause of Action**

**(NRS 41.600(2)(e) – Deceptive Trade Practices; CCCS Class Members v. CCCS)**

213.    The CCCS Class Representatives reallege and incorporate by reference the averments contained in Paragraphs 1 through 212, inclusive, as though fully set forth herein.

214.    CCCS willfully committed an act of consumer fraud by violating the TCPA by contacting the CCCS Class Members on their cellular telephones using an ATDS without their prior express consent. *See* NRS 598.0923(2).

215.    CCCS's acts of consumer fraud caused the CCCS Class Members to suffer damage by invading their privacy and causing them incur additional cellular phone charges and/or lose allotted cellular phone minutes. *See* NRS 41.600(3)(a).

216.    The CCCS Class Members are entitled to injunctive relief prohibiting CCCS from continuing to violate the Nevada Deceptive Trade Practices Act in the future. *See* NRS 41.600(3)(b).

217.    The CCCS Class Members are entitled to attorneys' fees and costs. *See* NRS 41.600(3)(c).

**Seventh Cause of Action**

**(Negligent Violation of the TCPA; Check City Class Members v. Check City Defendants)**

218.    The Check City Class Representatives reallege and incorporate by reference the averments contained in Paragraphs 1 through 217, inclusive, as though fully set forth herein.

219.    The Check City Defendants used an ATDS to the Check City Class Representatives and Class Members on their cellular telephones, without obtaining the express consent of the Check City Class Representatives and Class Members, in violation of the TCPA.

220.     As a result of the Check City Defendants' negligent violations of the TCPA, the Check City Class Representatives and Class Members are entitled to an award of five hundred dollars ($500.00) in statutory damages for each and every call in violation of the TCPA.  47 U.S.C. § 227(b)(3).

221.    The Check City Class Representatives and Class Members are entitled to injunctive relief prohibiting the Check City Defendants from continuing to violate the TCPA in the future.

**Eighth Cause of Action**

**(Knowing/Willful Violation of the TCPA; Check City Class Members v. Check City Defendants)**

222.    The Check City Class Representatives reallege and incorporate by reference the averments contained in Paragraphs 1 through 221, inclusive, as though fully set forth herein.

223.    The Check City Defendants used an ATDS to call each of the Check City Class Representatives and Class Members on their cellular telephones, without obtaining the express consent of the Check City Class Representatives and Class Members, in violation of the TCPA.

224.    As a result of the Check City Defendants' knowing or willful violations of the TCPA, the Check City Class Representatives and Class Members are entitled to an award of up to one thousand five hundred dollars ($1500.00) in statutory damages for each and every call in violation of the TCPA.  *See* 47 U.S.C. § 227(b)(3).

225.    The Check City Class Representatives and Class Members are entitled to injunctive relief prohibiting the Check City Defendants from continuing to violate the TCPA in the future.

**Ninth Cause of Action**

**(NRS 41.600(2)(e) – Deceptive Trade Practices; Check City Class Members v. Check City Defendants)**

226.    The Check City Class Representatives reallege and incorporate by reference the averments contained in Paragraphs 1 through 225, inclusive, as though fully set forth herein.

227.    The Check City Defendants willfully committed an act of consumer fraud by:

    a.  Knowingly making false representations in transactions to borrowers that "references" will be contacted for a credit reference, when, in reality, the Check City Defendants would only contact the "references" if the borrower defaulted on his or her loan.  *See* NRS 598.0915(15).

    b.  Failing to disclose a material fact in connection with the lending of money to borrowers by failing to disclose the Check City Defendants would contact the borrower's "references" if the borrower defaulted on his or her loan.  NRS 598.0923(2).

    c.  Violating the TCPA by contacting the Check City Class Members on their cellular telephones using an ATDS without their prior express consent.  *See* NRS 598.0923(2).

228.    The Check City Defendants' acts of consumer fraud caused the Check City Class Representatives and Class Members to suffer damage by invading their privacy and causing them incur additional cellular phone charges and/or lose allotted cellular phone minutes.  *See* NRS 41.600(3)(a).

229.    The Check City Class Representatives and Class Members are entitled to injunctive relief prohibiting the Check City Defendants from continuing to violate the Nevada Deceptive Trade Practices Act in the future.  *See* NRS 41.600(3)(b).

230.    The Check City Class Representatives and Class Members are entitled to attorneys' fees and costs.  *See* NRS 41.600(3)(c).

**Tenth Cause of Action**

**(Negligent Violation of the TCPA; Cash 1 Class Members v. Cash 1)**

231.    The Cash 1 Class Representative realleges and incorporates by reference the averments contained in Paragraphs 1 through 230, inclusive, as though fully set forth herein.

232.    Cash 1 used an ATDS to the Cash 1 Class Representative and Class Members on their cellular telephones, without obtaining the express consent of the Cash 1 Class Representative and Class Members, in violation of the TCPA.

233.    As a result of the Cash 1's negligent violations of the TCPA, the Cash 1 Class Representative and the Cash 1 Class Members are entitled to an award of five hundred dollars ($500.00) in statutory damages for each and every call in violation of the TCPA.  47 U.S.C. § 227(b)(3).

234.    The Cash 1 Class Representative and Class Members are entitled to injunctive relief prohibiting Cash 1 from continuing to violate the TCPA in the future.

**Eleventh Cause of Action**

**(Knowing/Willful Violation of the TCPA; Cash 1 Class Members v. Cash 1)**

235.    The Cash 1 Class Representative realleges and incorporates by reference the averments contained in Paragraphs 1 through 234, inclusive, as though fully set forth herein.

236.    Cash 1 used an ATDS to call each of the Cash 1 Class Representative and Class Members on their cellular telephones, without obtaining the express consent of the Cash 1 Class Representative and Class Members, in violation of the TCPA.

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

237.    As a result of Cash 1's knowing or willful violations of the TCPA, the Cash 1 Class Representative and Class Members are entitled to an award of up to one thousand five hundred dollars ($1500.00) in statutory damages for each and every call in violation of the TCPA.  *See* 47 U.S.C. § 227(b)(3).

238.    The Cash 1 Class Representative and Class Members are entitled to injunctive relief prohibiting Cash 1 from continuing to violate the TCPA in the future.

## Twelfth Cause of Action

### (NRS 41.600(2)(e) – Deceptive Trade Practices; Cash 1 Class Members v. Cash 1 Defendants)

239.    The Cash 1 Class Representative realleges and incorporates by reference the averments contained in Paragraphs 1 through 238, inclusive, as though fully set forth herein.

240.    Cash 1 willfully committed an act of consumer fraud by:

a.  Knowingly making false representations in transactions to borrowers that "references" will be contacted for a credit reference, when, in reality, Cash 1 would only contact the "references" if the borrower defaulted on his or her loan.  *See* NRS 598.0915(15).

b.  Failing to disclose a material fact in connection with the lending of money to borrowers by failing to disclose Cash 1 would contact the borrower's "references" if the borrower defaulted on his or her loan.  NRS 598.0923(2).

c.  Violating the TCPA by contacting the Cash 1 Class Members on their cellular telephones using an ATDS without their prior express consent.  *See* NRS 598.0923(2).

241.    Cash 1's acts of consumer fraud caused the Cash 1 Class Representative and Class Members to suffer damage by invading their privacy and causing them incur additional cellular phone charges and/or lose allotted cellular phone minutes.  *See* NRS 41.600(3)(a).

242.    The Cash 1 Class Representative and Class Members are entitled to injunctive relief prohibiting Cash 1 from continuing to violate the Nevada Deceptive Trade Practices Act in the future.  *See* NRS 41.600(3)(b).

243.    The Cash 1 Class Representative and Class Members are entitled to attorneys' fees and costs. *See* NRS 41.600(3)(c).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

## VIII.   JURY DEMAND

244.    The DLC Class Representatives, the CCCS Class Representatives, the Check City Class Representatives, and the Cash 1 Class Representative, hereby demand a jury trial.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court grant Plaintiffs and all Class Members the following relief against Defendants:

1.    As a result of DLC's negligent violations of 47 U.S.C. § 227(b)(1), the DLC Class Representatives seek for themselves, and each DLC Class Member, five hundred dollars ($500.00) in statutory damages.

2.    As a result of DLC's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), the DLC Class Representatives seek for themselves, and each DLC Class Member, one thousand five hundred dollars ($1,500.00) in statutory damages.

3.    Injunctive relief prohibiting DLC from continuing to violate 47 U.S.C. § 227(b)(1).

4.    As a result of DLC's violations of the Nevada Deceptive Trade Practices Act, the DLC Class Representatives seek for themselves, and each DLC Class Member: (i) damages in an amount to be determined trial; (ii) injunctive relief prohibiting DLC from continuing to violate the Nevada Deceptive Trade Practices Act in the future; and (iii) attorneys' fees and costs. *See* NRS 41.600(3)

5.    An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding the DLC Class Representatives are proper representatives of the DLC Class, and appointing undersigned counsel and their law firms representing the DLC Class Representatives as counsel for the Class.

6.    As a result of CCCS's negligent violations of 47 U.S.C. § 227(b)(1), the CCCS Class Representatives seek for themselves, and each CCCS Class Member, five hundred dollars ($500.00) in statutory damages.

7.    As a result of CCCS willful and/or knowing violations of 47 U.S.C. § 227(b)(1), the CCCS Class Representatives seek for themselves, and each CCCS Class Member, one thousand five hundred dollars ($1,500.00) in statutory damages.

BAILEY❖KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Phone (702) 562-8820

8.      Injunctive relief prohibiting CCCS from continuing to violate 47 U.S.C. § 227(b)(1).

9.      As a result of CCCS's violations of the Nevada Deceptive Trade Practices Act, the CCCS Class Representatives seek for themselves, and each CCCS Class Member: (i) damages in an amount to be determined trial; (ii) injunctive relief prohibiting CCCS from continuing to violate the Nevada Deceptive Trade Practices Act in the future; and (iii) attorneys' fees and costs. *See* NRS 41.600(3).

10.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding the DLC Class Representatives are proper representatives of the DLC Class, and appointing undersigned counsel and their law firms representing the DLC Class Representatives as counsel for the Class.

11.     As a result of the Check City Defendants' negligent violations of 47 U.S.C. § 227(b)(1), the Check City Class Representatives seek for themselves, and each Check City Class Member, five hundred dollars ($500.00) in statutory damages.

12.     As a result of the Check City Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), the Check City Class Representatives seek for themselves, and each Check City Class Member, one thousand five hundred dollars ($1,500.00) in statutory damages.

13.     Injunctive relief prohibiting the Check City Loan Center Defendants from continuing to violate 47 U.S.C. § 227(b)(1).

14.     As a result of the Check City Defendants' violations of the Nevada Deceptive Trade Practices Act, the Check City Class Representatives seek for themselves, and each Check City Class Member: (i) damages in an amount to be determined trial; (ii) injunctive relief prohibiting the Check City Defendants from continuing to violate the Nevada Deceptive Trade Practices Act in the future; and (iii) attorneys' fees and costs. *See* NRS 41.600(3)

15.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding the Check City Class Representatives are proper representatives of the Check City Class, and appointing undersigned counsel and their law firms representing the Check City Class Representatives as counsel for the Class.

16.     As a result of the Cash 1's negligent violations of 47 U.S.C. § 227(b)(1), the Cash 1 Class Representative seeks for herself, and each Cash 1 Class Member, five hundred dollars ($500.00) in statutory damages.

17.     As a result Cash 1's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), the Cash 1 Class Representative seeks for herself, and each Cash 1 Class Member, one thousand five hundred dollars ($1,500.00) in statutory damages.

18.     Injunctive relief prohibiting Cash 1 from continuing to violate 47 U.S.C. § 227(b)(1).

19.     As a result of the Cash 1's violations of the Nevada Deceptive Trade Practices Act, the Cash 1 Class Representative seek for themselves, and each Cash 1 Class Member: (i) damages in an amount to be determined trial; (ii) injunctive relief prohibiting Cash 1 from continuing to violate the Nevada Deceptive Trade Practices Act in the future; and (iii) attorneys' fees and costs.  *See* NRS 41.600(3)

20.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding the Cash 1 Class Representative is a proper representative of the Cash 1 Class, and appointing undersigned counsel and their law firms representing the Cash 1 Class Representative as counsel for the Class.

21.     Reasonable attorneys' fees and costs.

22.     Such other relief as the Court deems just and proper.

DATED this 20th day of September, 2013.

By:  /s/ Dennis L. Kennedy
DENNIS L. KENNEDY
KELLY B. STOUT
PAUL C. WILLIAMS
BAILEY❖KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148

GEORGE H. HAINES
DAVID H. KRIEGER
HAINES & KRIEGER
8985 South Eastern Avenue, Suite 130
Henderson, Nevada 89123
*Attorneys for Plaintiffs*

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820