UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PASQUAIL BATES, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>DOLLAR LOAN CENTER, LLC, et al.,<br><br>  Defendants. | Case No. 2:13-CV-1731-KJD-CWH<br><br><br>ORDER |

Before the Court is Plaintiff Ronald Grider's Motion for Class Certification and Appointment of Class Counsel (#126). Defendants opposed the motion (#142) and Plaintiff replied (#151) and objected to certain evidence in Defendants' opposition (#152). Defendants responded to the objection (#154), and Plaintiff replied (#164). Defendants also filed errata to #142 and #154 (##158, 160). Defendants then filed a Notice of Supplemental Authority (#162) and Plaintiff responded (#166).[1]

**I. Background**

The relevant facts are relatively simple. An individual seeking a loan from Defendants ("DLC") would fill out an application, including providing the names and phone numbers of several references. Immediately below the portion of the application marked "REFERENCES,"

---

[1] Filings such as errata and notices of supplemental authority serve an important purpose when they are limited to their proper functions. Any content beyond the narrowly defined scope of such documents is improper and will not be considered by the Court. A short response is permitted to the filing of notice of supplemental authority. Accordingly, Plaintiff's Motion for Leave to File Response (#166) is granted.

and followed immediately by a signature line are these words: "I hereby give permission to verify the above information for a credit decision based on verified information, which may include contacting employers, relatives, bank references, and obtaining credit reports." #154, Ex. B-1. It is the applicant, and not the reference who is giving consent. The application later includes the following verbiage:

> We call our customers from time to time to provide live or pre-recorded messages about due dates, collection matters and other information about your loans with us. These messages may be played automatically when the telephone is answered, whether answered by you or someone else. They may also be recorded by your answering machine or voice mail. You give us your consent to call any telephone number, even if the number is a work number or cell number, and even if you are charged for the call. You also agree that we may monitor and record telephone conversations between you and us. You agree that we will not be liable to you for any calls or messages under this paragraph.

#154, Ex. B-1.

As borrowers became delinquent in their loans, DLC would contact the listed references. Plaintiffs are references who were contacted by DLC, allegedly using automatic telephone dialing systems (ATDS) and without consent.

**II. Legal Standards**

    **A. Class Certification**

As a threshold matter, a party seeking class certification must prove that the class is ascertainable, meaning that membership in the class can be determined by reference to objective criteria. Kristensen v. Credit Payment Servs., 2:12-CV-00528-APG, 2014 WL 1256035 (D. Nev. Mar. 26, 2014) (citing Berger, 741 F.3d at 1071). If this threshold is met, a court then turns to Rule 23.

Federal Rule of Civil Procedure 23 outlines the conditions for establishing a class action. Specifically, the suit must satisfy each of the four criteria set out in subdivision (a), and fit into one of the three categories described in subdivision (b). Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010) (citing Shady Grove Orthopedic Associates, P.A. v. Allstate Ins.

Co., 559 U.S. 393, 398 (2010)). The decision to grant or deny class certification is within the trial court's "wide discretion," being in the "best position to consider the most fair and efficient procedure for conducting any given litigation." Bateman, 623 F.3d at 712. However, a party seeking class certification "must affirmatively demonstrate his compliance with the Rule." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). Thus, certification is proper only where the trial court has engaged in a rigorous analysis and found Rule 23 to be satisfied. Wal-Mart Stores, Inc., 131 S. Ct. at 2551.

Such rigorous analysis "[f]requently . . . entail[s] some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). Certifying a class "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. at 2552. Such overlap is not "unusual," but rather is "a familiar feature of litigation." Id. Such is the case here.

**B. Telephone Consumer Protection Act (TCPA)**

In relevant part, the TCPA prohibits calls using an autodialing system to a cellular telephone number without "the prior express consent of the called party." 47 U.S.C.A. § 227 (b)(1)(A); see Meyer v. Portfolio Recovery Associates, LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) cert. denied, 133 S. Ct. 2361 (2013) (defining the elements of a TCPA claim as "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent."). In determining whether an autodialing system was used, the sole question before the Court is whether "the equipment has the *capacity*" to be an autodialer. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 951 (9th Cir. 2009) (emphasis in original). It is irrelevant whether the system actually functioned as an autodialer in making the call at issue. Id.

**C. Nevada Deceptive Trade Practices Act (NDTPA)**

The NDTPA allows an action to be brought by any person who is the victim of consumer fraud. NRS 41.600(1). Consumer fraud is defined in relevant part as 1) knowingly making a false

3

representation in a transaction under NRS 598.0915(15); 2) failing to disclose a material fact in connection with the sale or lease of goods or services under NRS 598.0923(2); or 3) violating a federal statute relating to the sale or lease of goods or services under NRS 598.0923(3). NRS 41.600(2)(e).

**IV. Analysis**

Plaintiff seeks to define the class as follows:

> All persons within the United States who, on or after September 20, 2009, (i) received a telephone call from CCCS to their cellular telephone, (ii) regarding a debtor of DLC Nevada, (iii) as a result of having their telephone number listed by a debtor under "References" on a credit application.
>
> Excluded from the Proposed Class are CCCS, DLC Nevada, and DLC Empire, and any entities in which they have a controlling interest, their agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family. Also excluded are claims for personal injury, and/or emotional distress.

**A. The Threshold Question of Ascertainability**

This question requires Plaintiff to demonstrate that "membership in the class can be determined by reference to objective criteria." Kristensen, 2014 WL 1256035, at *5-6. Defendants argue that the class is not ascertainable because 1) the class is overbroad, 2) individualized proof of consent is required to determine class membership, 3) ascertaining which calls are properly considered in this matter will require substantial effort, and 4) a portion of the class will likely be very difficult and perhaps impossible to identify. Although these assertions implicate ascertainability only tangentially at best, the Court will address each assertion in turn.

Defendants argue that the class is overbroad because liability requires both a lack of consent and the use of an ATDS, elements missing from the proposed class definition. Defendants' argument is meritless. Unless both lack of consent and the use of an ATDS are established, any claim will fail, making the omission of these elements harmless. Further, it appears likely to the Court that both consent and use of an ATDS can be resolved on a class-wide basis. However, if consent is ultimately an issue requiring individual in-court determinations,

then it is almost certain that the class may not properly be certified. Regardless, overbreadth of the class definition fails to implicate the ascertainability of the class.

Harmonious with the above discussion, the Court finds that questions regarding consent do not render the class unascertainable. Rather, they implicate the Court's analysis under Rule 23(b). Additionally, Defendants' argument that the required data retrieval and analysis will be tedious is wholly unpersuasive. It would be far more tedious to hold trials for each alleged TCPA violation at issue here; this is precisely the reason that class actions exist.

Lastly, the Court is somewhat concerned by the prospect of class members that are difficult or impossible to identify. This is likely to occur where the reference named in the loan application has changed their telephone number. Aside from the potential difficulties of finding such individuals, there is a substantial question regarding whether the number was changed prior to the Defendants' call, meaning that the true plaintiff will perhaps be impossible to find. However, Plaintiff continues to assert that eighty-five to ninety percent of the class will be reached. See Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1306 (9th Cir. 1990) (holding that the class is not unmanageable even where a large percentage of members were "not readily identifiable."). However, the Court requires the use of objective criteria in ascertaining class members. Accordingly, the Court will hold a hearing on this matter. If satisfactory objective criteria cannot be found, the Court suggests narrowing the class to only those individuals who have retained their phone number throughout the relevant period.

**B. Numerosity under Rule 23(a)**

The Court finds the numerosity requirement satisfied. Although it is unclear whether Grider's estimate of 40,000 class members is conservative, it is clear that joinder of even a small fraction of these parties is impractical. Further, DLC dedicated a two-line footnote to arguing that numerosity is not met, effectively conceding the point.

**C. Commonality under Rule 23(a)**

Central to commonality is "not the raising of common 'questions'—even in droves—but,

5

rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). Grider asserts that DLC engaged in a standardized course of conduct, allowing the bulk of relevant questions to be answered in unison. DLC contends that the questions of whether an ATDS was used to contact a given class member, and whether that member gave consent for DLC's contact, are individual questions that simply cannot be answered in the aggregate. To bolster DLC's claim as to consent, it has supplied various form declarations. The Court is skeptical of the evidentiary value of these declarations, especially in light of the dramatically limited consent explicitly conveyed in the loan documents, but will grant DLC's motion for an evidentiary hearing.

On a related note, it is premature to address the dubious question of whether the consent of a reference may properly be conveyed by a borrower. Even if the borrowers properly conveyed the references' consent, that consent appears to be inherently limited. To the extent that DLC exceeded the scope of consent, intermediary issues are simply irrelevant.

As to the question of whether an ATDS was used for all calls, and whether the answer defeats commonality, the Court here too will rely on an evidentiary hearing. The evidence before the Court strongly suggests that all calls placed by DLC used an ATDS. However, the Court will conduct an evidentiary hearing to determine whether this question defeats commonality. Even if the Court finds that some non-ATDS calls were placed, the likely result will be clarification of the class definition, and not failure of the class for lack of commonality.

**D. Typicality under Rule 23(a)**

DLC attempts to misconstrue Grider's testimony as evidencing his consent for DLC to contact him regarding the borrower's delinquent loan. Although the Court is inclined to reject DLC's argument as unpersuasive legal and semantic gymnastics, the Court will hold a hearing on this issue as well, especially given the potentially contradictory declarations submitted by Mr. Aviles.

### E. Adequacy of Representation under Rule 23(a)

The Court finds Grider's representation to be adequate, and DLC fails to argue to the contrary.

### F. Common Questions Predominate under Rule 23(b)

Of the three categories described in Rule 23(b), Plaintiff here seeks certification only under Rule 23(b)(3). This Rule permits a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." It appears to the Court that common questions predominate if consent and the use of an ATDS can be resolved on a class-wide basis. Accordingly, as noted above, the Court will hold an evidentiary hearing on the issues of consent and whether an ATDS was used in all relevant calls.

### G. Superiority of Class Action

Rule 23(b) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Relevant factors relating to superiority include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). To be clear, the Ninth Circuit suggests that "[s]uperiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large [,] (6) of the defendant," and (7) of the issues. Bateman, 623 F.3d at 713. The points of view above are not necessarily listed in order of importance of the respective interests." Bateman, 623 F.3d at 713.

To begin, given the diminutive damages available to plaintiffs individually, the sort of TCPA violation at issue here will be meaningfully addressed only through the efficiencies of a class action. This also underscores the Court's determination that individual's interest in

1  controlling the prosecution of this matter is likely nonexistent. It is simply not cost-effective to
2  do so. Turning to the second factor, the Court is unaware of any other litigation already begun by
3  class members. Turning to the third factor, all of the action in this matter either occurred in or is
4  centered around Nevada. Accordingly, it is desirable to concentrate the litigation of these claims
5  in this forum. Turning to the fourth factor, the remaining concerns regarding manageability will
6  almost certainly be answered by the evidentiary hearing. In short, other than those issues to be
7  determined at the evidentiary hearing, from all relevant perspectives, a class action is the
8  superior method of resolving this matter.

**V. Conclusion**

The Court **HEREBY GRANTS** Plaintiff's Motion for Leave to File Response (#166); The Court further sets this matter for an evidentiary hearing on the following matters:

1. What, if any, objective criteria can be used to identify class members where the phone number provided has been reassigned? If no satisfactory objective criteria are available, can the class be defined to avoid this problem?

2. Precisely what consent was given via the loan documents, and does this consent vary from loan to loan? If consent varies, how does this impact commonality? Both parties may bring no more than two individuals who signed the declarations to testify before the Court.

3. Does DLC employ multiple independent systems in making calls, or are all calls generated by various facets of the same integrated system? If multiple independent systems are used, can the class be defined to avoid this commonality problem?

///
///
///
///
///
///

4. Did Grider's testimony actually suggest that he provided consent for DLC's contact with him in light of Mr. Aviles' multiple declarations, defeating typicality? Mr. Aviles' testimony will be essential to this inquiry.

The evidentiary hearing is set for 9:00 a.m. on Tuesday, December 9, 2014.

DATED this 28th day of October 2014.

_____
Kent J. Dawson
United States District Judge