DENNIS L. KENNEDY
Nevada Bar No. 1462
JOSHUA M. DICKEY
Nevada Bar No. 6621
KELLY B. STOUT
NEVADA BAR NO. 12105
PAUL C. WILLIAMS
Nevada Bar No. 12524
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
JDickey@BaileyKennedy.com
KStout@BaileyKennedy.com
PWilliams@BaileyKennedy.com

[Additional Attorneys on Signature Page]

*Attorneys for Plaintiffs*

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

RONALD GRIDER, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

CLARK COUNTY COLLECTION SERVICE, LLC, a Nevada limited-liability company; DOLLAR LOAN CENTER, LLC, a Nevada limited-liability company; and DLC EMPIRE, LLC, a South Dakota limited-liability company,

Defendants.

Case No. 2:13-cv-01731-KJD-CWH

**MOTION FOR AWARD OF ATTORNEY'S FEES, COSTS, AND FOR INCENTIVE AWARD TO CLASS REPRESENTATIVE RONALD GRIDER**

Final Approval Hearing
Date: February 21, 2017
Time: 9:00 a.m.
Courtroom:

Pursuant to Federal Rule of Civil Procedure 23 Plaintiff Ronald Grider ("Mr. Grider" or "Plaintiff") respectfully requests (the "Motion") that the Court award undersigned counsel ("Class Counsel") $2,640,000.00 in attorney's fees, costs, and expenses and award Mr. Grider $10,000.00 as an incentive award. As explained below, Mr. Grider and Class Counsel have expended a great deal of time and resources in this matter and have obtained a phenomenal result. Settlement Class Members who have submitted a valid claim will receive $1,500—the ***maximum amount*** of damages recoverable under the TCPA.

The Motion is supported by the papers and pleadings on file, the accompanying Memorandum of Points and Authorities, the exhibits attached thereto, and any oral argument heard by the Court.

DATED this 14th day of February, 2017.

BAILEY❖KENNEDY

By: /s/ Dennis L. Kennedy
DENNIS L. KENNEDY
JOSHUA M. DICKEY
KELLY B. STOUT
PAUL C. WILLIAMS

GEORGE H. HAINES
DAVID H. KRIEGER
HAINES & KRIEGER
8985 South Eastern Avenue, Suite 130
Las Vegas, Nevada 89123
Phone Number: (702) 880-5554
Fax Number: (702) 385-5518
GHaines@hainesandkrieger.com
DKrieger@hainesandkrieger.com
*Attorneys for Plaintiffs*

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

## I. INTRODUCTION

Mr. Grider respectfully seeks an award of attorney's fees, costs and expenses, and an incentive award to Mr. Grider for his service as class representative. The parties have entered into a class action Settlement Agreement and Release (the "Settlement Agreement") for the purposes of a class-wide settlement (the "Settlement Class")—which this Court has already preliminarily approved. Defendants Clark County Collection Service ("CCCS") Dollar Loan Center, LLC ("DLC Nevada"), and DLC Empire, LLC ("DLC Empire") do not oppose this Motion.

As this Court is aware, this matter involves Mr. Grider's allegations that CCCS violated the Telephone Consumer Protection Act ("TCPA") and the Nevada Deceptive Trade Practices Act ("NDTPA") by calling him and the putative class members on their cellular telephones without their prior express consent. The parties, after vigorously litigating the matter for two years, have determined that settlement is in the best interests of all involved, including the Settlement Class Members. The Settlement Agreement provides for significant monetary relief for all the Class Members. Specifically, Settlement Class Members who made valid claims will receive ***fifteen hundred dollars ($1,500.00)***—the ***maximum*** amount of damages allowed under the TCPA.

Accordingly, based on the extraordinary results achieved the substantial efforts of Mr. Grider and Class Counsel, Mr. Grider respectfully requests an award of attorney's fees and costs and expenses of $2,640,000 and an incentive award of $10,000 to Mr. Grider for his service as class representative. The attorney's fees sought are justified utilizing either a common fund or Lodestar Method. Specifically, the fees sought represent either approximately 32.6% of the settlement fund under the common fund method or a multiplier of 2.25 under the Lodestar method. Courts often approve awards representing 33% of the settlement fund or in which a multiplier is greater than 2.5.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. <u>The Class Action Complaint.</u>

On September 20, 2013, Mr. Grider filed a Complaint against CCCS, DLC Nevada, and DLC Empire (collectively, the "Defendants"), seeking appointment as the class representative for a class of individuals who received telephone calls from CCCS on their cellular telephones in violation of the TCPA. (*See generally* ECF No. 1, Compl.)

Mr. Grider asserted the following claims against CCCS: (1) negligently violating the TCPA by calling him on his cellular telephone utilizing an ATDS; (2) willfully violating the TCPA by calling him on his cellular telephone utilizing an ATDS; and, (3) violating the NDTPA by engaging in a deceptive trade practice through violating "a . . . federal statute or regulation relating to the sale or lease of goods or services." (*Id.* ¶¶ 204-17.)[1]

Mr. Grider alleged a direct claim against DLC Nevada for engaging in a deceptive trade practice by knowingly making a false representation in a transaction and by failing "to disclose a material fact in connection with the sale or lease of goods or services." (*Id.* ¶¶ 199-203, 213-17.) Mr. Grider also alleged that DLC Nevada is liable for CCCS's violations of the TCPA and NDTPA under principles of secondary liability, vicariously liability, enterprise liability, and agency law. (*Id.* ¶¶ 58-61, 71-75.)

On October 15, 2013, the Defendants filed separate Motions for Summary Judgment. (*See generally* ECF No. 15, DLC Empire's Motion for Summary Judgment; ECF No. 16, DLC Nevada's Motion for Summary Judgment; ECF No. 17, CCCS's Motion for Summary Judgment.) The Court preliminarily struck the Motions for Summary Judgment and numerous other related filings. (*See generally* ECF No. 99, Order.) The Defendants then filed a consolidated Motion for Summary Judgment, which the Court denied. (*See generally* ECF No. 103, Order.) Shortly thereafter, the Defendants filed separate Answers to the Complaint. (*See* ECF No. 130, DLC Nevada's Answer; ECF No. 131, DLC Empire's Answer; ECF No. 132, CCCS's Answer.)

During the pendency of the initial Motions for Summary Judgment, the parties began conducting substantial merits and class discovery. (ECF No. 222-6, Decl. Dennis L. Kennedy, Dec. 4, 2015 ["Kennedy Decl. Prelim. Approval"] ¶ 2.)

**B. <u>Plaintiff Seeks Class Certification; the Court Sets an Evidentiary Hearing.</u>**

On August 4, 2014, Mr. Grider filed his Motion for Class Certification. (*See generally* ECF No. 126.) On October 28, 2014, the Court ordered that an Evidentiary Hearing be held on Mr.

[1] *See* NRS 598.0915(15); NRS 598.0923(2)-(3).

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Grider's Motion for Class Certification in order to address certain concerns the Court had with potential class certification. (*See* ECF No. 168, Order, at 8:11 - 9:4.)

### C. The Parties Engage in Settlement Discussions and Three Lengthy Mediations.

The parties continued to conduct discovery leading up to the evidentiary hearing on Mr. Grider's Motion for Class Certification. (ECF No. 222-6, Kennedy Decl. Prelim. Approval ¶ 2.) During this process, the parties were simultaneously engaging in settlement discussions. (*Id.* ¶ 3.) On January 6, 2015, the parties participated in mediation with the Honorable Lawrence Leavitt (Ret.). (*Id.* ¶ 4.) Although the parties made substantial progress toward a settlement, they were unable to reach a resolution. (*Id.*)

One day prior to the evidentiary hearing, the parties agreed on the general framework of a settlement agreement. (*Id.* ¶ 5.) However, the parties had difficulties reaching agreement on certain terms of the Settlement Agreement and requested that the Court order the parties to engage in a Judicial Settlement Conference with the Honorable Carl W. Hoffman—the Magistrate Judge assigned to the Matter. (*Id.*) On June 19, 2015, the parties attended a Judicial Settlement Conference with Magistrate Judge Hoffman and were able to reach an agreement as to the essential terms of a settlement. (*Id.* ¶ 6.) The parties attempted to reduce their agreement to a fully integrated settlement agreement and release but still were at an impasse as to one term—the definition of the claim amount. (*Id.* ¶ 7.) On September 22, 2015, the parties again attended a Judicial Settlement Conference with Magistrate Judge Hoffman and were able to reach an agreement as to the definition of the claim amount. (*Id.* ¶ 8.) The parties were then able to finalize and execute the Settlement Agreement. (*Id.*)

## III. THE SETTLEMENT CLASS AND SETTLEMENT AGREEMENT

A more detailed explanation of the terms of the Settlement Agreement are contained in the Motion for Preliminary Approval. (ECF No. 222, Plaintiff's Motion for: (1) Preliminary Approval of Class Action Settlement Agreement; and (2) Certification of Settlement Class, Dec. 4, 2015 ["Mot. Prelim. Approval"], at 6:13 – 15:13.) The significant terms of the Settlement Agreement, for purposes of final approval, are set forth below.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**A. The Settlement Class.**

Pursuant to this Court's Preliminary Approval Order, membership in the Settlement Class ("Settlement Class Members") is defined as follows:

> All natural persons, within the United States, who were called by [CCCS], on their cellular telephone—excluding calls that were initiated by manually dialing via a desktop telephone—between September 20, 2009 and September 20, 2013 (the "Class Period") as a result of having their telephone number listed by a customer of DLC Nevada as a "Reference" on a credit application. Settlement Class Members do not include recipients of a single telephone call received as a result of a reassigned telephone number, as defined by the Federal Communications Commission in its TCPA Omnibus Declaratory Ruling and Order No. 15-72 (July 18, 2015). Also excluded from the class are Defendants, any parent companies, affiliates, subsidiaries or any employees thereof, and any entities in which any of such companies has a controlling interest; the Judge or Magistrate Judge to whom the Action is assigned and any member of those Judges' immediate families; as well as all persons who validly request exclusion from the Class.

(ECF No. 223, Order Granting Motion for Preliminary Approval of Class Action Settlement; and Certification of Settlement Class, May 31, 2016, ["Prelim. Approval Order"], at 2:25 – 3:8.)

**B. The Settlement Fund.**

Under the Settlement Agreement, the maximum amount payable by CCCS in the settlement of this matter was $8,000,000.00 (the "Total Settlement Pool"). (ECF No. 222-1, Settlement Agreement and Release, Dec. 3, 2015 ["Settlement Agr."] § VI.A.1.) The Total Settlement Pool is composed of two parts: (1) a "Minimum Settlement Fund;" and (2) a "Residual Settlement Fund." (*Id.* §§ VI.A.2-3.) All funds have been maintained in an interest bearing account. (*Id.* § VI.B.)

The "Minimum Settlement Fund" is four million one hundred forty thousand dollars ($4,140,000.00), and is composed of two subparts: (a) attorney's fees, costs and expenses totaling two million six hundred forty thousand dollars ($2,640,000.00); and (b) a minimum payment (the "Minimum Payment") by CCCS of one million five hundred thousand dollars ($1,500,000.00). (*Id.* § VI.A.2.) The Minimum Payment consists of: (i) claims administration costs, estimated to be one hundred thousand dollars ($100,000.00); (ii) the class representative's incentive award of ten thousand dollars ($10,000.00); and (iii) the "Minimum Aggregate Payout," which is the Minimum Payment less administration costs and the class representative's incentive award. (*Id.*)



BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

The Residual Settlement Fund is the difference between the Total Settlement Pool ($8,000.000.00) less the Initial Settlement Fund ($4,140,000.00). (*Id.* § VI.A.3.) The amount of the Residual Settlement Fund shall not exceed Three Million Eight Hundred Sixty Thousand Dollars ($3,860,000.00). (*Id.*)

CCCS timely made its initial deposit of six hundred thousand dollars ($600,000.00) into the Bank Account (the "Initial Deposit") and timely deposited its monthly payments of One Hundred Seventy-Seven Thousand Dollars ($177,000.00). (ECF No. 231, Declaration of Lisa Mullins ["Mullins Decl."], ¶ 3.) Currently, the Bank Account has funds of $1,743,602.34—which is more than sufficient to pay all claims made by Settlement Class Members. (*Id.*)

**C. <u>Distribution of the Settlement Fund.</u>**

The Claims Administrator will distribute the funds in the Bank Account in the following order and within the time period set forth with respect to each such payment: (a) no later than thirty (30) days after the Effective Date,[2] the Claims Administrator shall pay to the Class Representative any incentive award ordered by the Court, as described in Section III.N; (b) no later than thirty (30) days after the Effective Date, the Claims Administrator shall pay by check (the "Settlement Checks") to Settlement Class Members their Approved Claims pursuant to Section III.F and an initial *cy pres* award (if any); (c) no later than thirty (30) days after the Effective Date, the Claims Administrator shall pay to Bailey❖Kennedy and Haines & Krieger ("Class Counsel") the award of attorney's fees, costs, and expenses ordered by the Court;[3] (d) finally, two-hundred ten (210) days after the date on which the last Settlement Check will be issued, the Claims Administrator shall pay any amounts remaining, if any, to the *cy pres* recipient. (*Id.* § VI.D-H.)

---

2 As detailed in the Settlement Agreement, the "Effective Date" means "the date of which all appellate and or subsequent proceedings are ended, and/or the time for appeal or further appeal from a final judgment and order of dismissal with prejudice in the Action . . . has passed, such that the Final Judgment and Order of Dismissal with Prejudice takes effect, in its entirety." (*Id.* § VI.I.)

3 The parties acknowledge that the Bank Account will not be fully funded to pay all the Attorney's fees at once and that Attorney's Fees will be paid as the ongoing deposits to the Bank Account by CCCS are made.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**D. The Final Approval Hearing.**

The Final Approval Hearing is currently set for February 21, 2017. (ECF No. 223, Prelim. Approval Order, at 4:6-10.) At the Final Approval Hearing, the Court will decide whether to finally approve the Settlement Agreement and the requested attorney's fees, costs, and incentive award.

## IV. ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

**A. Claims Procedure, Expenses, and Claims Filed.**

Potential Settlement Class Members were given 120 days from the direct mail notice to submit a claim. (ECF No. 222-1, Settlement Agr. § I.D.) Settlement Class Members were provided three ways to submit a claim: (1) by calling the Settlement Call Center operated by the Claims Administrator; (2) by submitting a claim in writing by overnight mail to the Claims Administrator; or (3) by submitting a claim online at the Settlement Website maintained by the Claims Administrator. (*Id.* § VII.D.)

In order to submit a claim, the Settlement Class Members were required to provide the following information about themselves: (1) his or her full name; (2) confirmation of his or her identity and cell phone number pursuant to a procedure determined by the Claims Administrator; (3) the Claim Identification Number, if he or she received a Direct Mail Notice; (4) his or her current address for mailing settlement payment; (5) that he or she was the subscriber or the regular user of the cell phone number that was called; and (6) if known, the name of the debtor for whom he/she was listed as a "Reference." (*Id.* § VII.D.) Further, the Settlement Class Members were required to declare, under penalty of perjury, that all the information provided to the Claims Administrator was true and correct. (*Id.*) The Class Administrator approved all timely and valid claims for individuals whom it verified, through CCCS's records or other evidence, were Settlement Class Members ("Approved Claims"). (*Id.* § VI.G.)

Approved Claims will be awarded fifteen hundred dollars ($1,500.00)—the maximum amount of damages recoverable for a willful violation of the TCPA. (*Id.* § VI.E.)

**B. Objections and Requests for Exclusion.**

Settlement Class Members were permitted to request to be excluded from (i.e. opt-out), or file an objection to, the Settlement Agreement. (*Id.* §§ IX, X.) The Claims Administrator did not



BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

receive any requests for exclusion, the deadline for which passed on February 6, 2017. (ECF No. 231, Mullins Decl. ¶¶ 18-19.) Further, no Settlement Class Members have filed an objection to the Settlement Agreement, the deadline for which passed on February 13, 2017. (*Id.* ¶¶ 19-20.)[4]

**C. Settlement Checks.**

The Claims Administrator will send the Settlement Checks via U.S. Mail to the Settlement Class Members who have made Approved Claims no later than 30 days after the Effective Date. (ECF No. 222-1, Settlement Agr. § VI.G.)

**D. Class Representative's Incentive Award.**

The Settlement Agreement provides that Class Counsel will request an incentive award in the amount of $10,000.00 to be paid to the Class Representative, Ronald Grider, subject to Court approval, within thirty (30) days of the Effective Date. (*Id.* § XVII.) Defendants have agreed not to oppose a request for such incentive award in that amount. (*Id.*) As more fully detailed in the Motion for Fees and Costs, the Court should approve the $10,000 incentive award to compensate Mr. Grider for his time and efforts in litigating this matter on behalf of the Settlement Class Members.

**E. Attorney's Fees and Costs.**

The Settlement Agreement contemplates that Class Counsel shall be entitled to apply to the Court for an award of attorney's fees, costs, and expenses to be paid from the Settlement Fund. (*Id.* § XVI.) Plaintiff is simultaneously filing an application for attorney's fees and litigation related costs and expenses in an amount not to exceed thirty-three percent (33%) of the Settlement Fund. (*Id.*) Defendants have agreed not to oppose an application by Class Counsel for an award of attorney's fees, costs, and expenses as long as it does not exceed thirty-three percent (33%). (*Id.*)

**F. Administrator's Expenses for Notice and Administration.**

The costs of notice and claims administration are to be paid from the Settlement Fund. (*Id.* § VII.B.) The costs include payment of the Direct Mail Notices, Settlement Website, publication of the summary notice, and claims administration. (*See id.* § VII.B.) The Settlement Agreement

---

4 The deadline to file an objection was February 10, 2017. (ECF No. 222, Prelim. Approval Order, at 7:8-10.)

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

specifically provides that the administration costs and Direct Mail Notices costs are estimated at one hundred thousand dollars ($100,000.00) be held in trust by the Claims Administrator. (*Id.*)

However, the Settlement Agreement also provides that if the claims administration costs "exceed $100,000.00, Class Counsel may, for good cause, seek to increase this amount, supported by adequate documentation from the Claims Administrator." (*Id.*) Here, because the claims administration costs have exceeded $100,000.00, Class Counsel is simultaneously filing a separate motion to increase the additional class administration payment. (ECF No. 231, Mullins Decl. ¶¶ 22-23.)

**G. <u>Cy Pres Distribution.</u>**

Here, because the paid claims, class administration costs, and incentive award will be less than the Minimum Payment ($1,500,000.00), the difference of the Minimum Payment less paid Approved Claims, class administration costs, and the incentive award will be awarded to the Moment of Truth Ministry. (ECF No. 231, Mullins Decl. ¶ 21.)

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

## V. ARGUMENT

### A. <u>The Fee Award is Fundamentally Fair, Reasonable, and Justified by the Extraordinary Results Obtained.</u>

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or ***by the parties' agreement***." Fed. R. Civ. P. 23(h) (emphasis added). As explained by the Ninth Circuit Court of Appeals, "[a]ttorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (internal quotation marks omitted).

In this case, Class Counsel's request for fees in the amount of $2,640,000.00 is presumptively reasonable because the amount arose from formal, arm's length negotiation between the Parties. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Additionally, the reasonableness of the request can be confirmed under either the percentage-of-the-fund or the Lodestar method of calculating attorneys' fees.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

***1. The Fee Award is Presumptively Reasonable Because It Resulted from an Arm's Length Negotiation Between the Parties.***

While the Court must determine whether an attorneys' fee provision included in class action settlement is fundamentally fair, adequate and reasonable, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit ***must be limited*** to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (emphasis added).

The Ninth Circuit has held where settlement terms, including attorneys' fees, are reached through formal mediation, the Court may rely upon the mediation proceedings "as independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class." *Id.* at 1029; *see also Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (approving class settlement agreement where parties engaged in a "full-day mediation session," which helped to establish that the proposed settlement was noncollusive); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"); 2 McLaughlin on Class Actions, § 6:7 (13th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion").

Here, the settlement (including the amount of attorneys' fees) was negotiated during three lengthy mediations between the Parties. (Mot. for Prelim. App. Ex. 6, at ¶¶ 4-8, ECF No. 222-6.) The Parties first participated in mediation with the Honorable Lawrence Leavitt (Ret.) on January 6, 2015. (*Id.* at ¶ 4.) Although the parties made substantial progress toward a settlement, they were unable to reach a resolution. (*Id.*) One day prior to the evidentiary hearing on Mr. Grider's Motion for Class Certification, the Parties agreed on the general framework of a settlement agreement. (*Id.*

at ¶ 5.) However, the Parties had difficulties reaching agreement on certain terms and requested a Judicial Settlement Conference with the Honorable Carl W. Hoffman—the Magistrate Judge assigned to the Matter. (*Id.*) On June 19, 2015, the parties attended a Judicial Settlement Conference with Magistrate Judge Hoffman and were able to reach an agreement as to the essential terms of a settlement but later reached an impasse regarding the definition of the claim amount when drafting a fully integrated settlement agreement and release. (*Id.* ¶¶ 6-7.) Therefore, the Parties attended another Judicial Settlement Conference with Magistrate Judge Hoffman on September 22, 2015 and were able to finalize and execute the Settlement Agreement. (*Id.* ¶ 8.)

Under these circumstances, the Court may give deference to the mediation proceedings and the judgment of the Parties regarding the reasonableness of fees. These arm's length negotiations before Judge Leavitt (Ret.) and Magistrate Judge Hoffman serve as "independent confirmation" of the reasonableness of the Settlement Agreement's terms, including the attorneys' fees, costs and expenses, and incentive award sought by this Motion. *See Hanlon*, 150 F.3d at 1029.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

#### ***2. The Fee Award is Justified Under Either the Percentage of the Fund Method or the Lodestar Method.***

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the Lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)). A court's exercise of discretion in choosing the method of calculating attorneys' fees will be upheld so long as the result is reasonable. *Id.*

Although attorney's fees are more often calculated as a percentage of the fund in cases with similar facts and settlement terms, the amount requested by Class Counsel is reasonable under either method of calculation. Class Counsel's request for attorney's fees in the amount of $2,608,370.39 is approximately 32.6% of the Settlement Fund. Likewise, if this Court were to apply the Lodestar method, it would need only apply a multiplier of approximately 2.25 to reach the same result. Regardless of the method chosen, the requested award of attorneys' fees is well within the range that courts have found reasonable in similar cases.

***3. Under the Percentage of the Fund Method, the Amount of Fees Requested is Justified Given the Extraordinary Result for the Settlement Class Members and the Risk Borne by Class Counsel.***

Courts generally award class counsel a percentage of the total fund where, as here, contingency-fee litigation has produced a common fund. *See* Newberg on Class Actions § 14:6 (4th Ed. 2002). The percentage-of-the-fund method "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Moreover, it is aligned with common practices in the legal marketplace, in which counsel's success is frequently measured by the result counsel has achieved. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success"). Furthermore, the percentage-of-the-fund method most efficiently aligns the incentives of the class members and their counsel and thus encourages counsel to spend their time efficiently, and to focus on maximizing the relief available to the class, rather than their own Lodestar hours. *Vizcaino*, 290 F.3d at 1050 n.5. It also comports with the established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying said attorneys a premium for successfully resolving contingency-fee cases. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("[I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of the class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.") (internal quotation marks omitted).

In common fund cases involving a residual fund, the percentage utilized must be calculated based on the total settlement fund. *See Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (holding district court abused its discretion by calculating attorneys' fees as a percentage of the class member's claims rather than against the total fund); *see also Boeing Co. v. Van Gemert,* 444 U.S. 472, 480–81 (1980) (affirming award of attorney's fees based on total amount of the judgment, even if some funds remained unclaimed). The Ninth Circuit has set 25% of the fund as a "benchmark" award under the percentage-of-fund method. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.



BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1993). "That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in [the] case." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272, 1989 WL 109959 (9th Cir. 1989).

In assessing a request for attorney's fees calculated using the percentage of the fund method, the court may consider multiple factors, including "the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–50 (9th Cir. 2002)).

In this case, the exceptional results obtained by Class Counsel, the litigation risks involved, the skill required, and the quality of the work performed all weigh heavily in favor of awarding attorney's fees based on approximately 32.6% of the Total Settlement Pool.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

a. The Outstanding Result Obtained by Class Counsel Supports the Requested Fee.

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; see also Fed. Jud. Ctr., Manual for Complex Litig., § 27.71, p. 336 (4th Ed. 2004) (the "fundamental focus is on the result actually achieved for class members"). Standing alone, this factor supports the requested attorney's fees award. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (considering counsel's "expert handling of the case"); *Six (6) Mexican Workers v. Ariz. Citrus Grower*s, 904 F.2d 1301, 1311 (9th Cir. 1990) (noting plaintiffs' "substantial success"); *In re Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d 283, 339 (3d Cir. 1998) (observing that "results achieved were 'nothing short of remarkable'" (quoting *In re Prudential Ins. Co. Sales Practices Litig.*, 962 F. Supp. 572, 585–86 (D.N.J. 1997))).

Here, each member of the Settlement Class will receive an award of $1500.00, which is the maximum amount of recovery provided under the TCPA. 47 U.S.C. § 227(b)(3). The TCPA

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

provides that a person may recover $500 for each violation.[5] 47 U.S.C. § 227(b)(3)(B). Furthermore, the TCPA provides the Court with the discretion to award treble damages if the court finds that the defendant's violation was committed "willfully or knowingly." 47 U.S.C. § 227(b)(3). By participating in the settlement of this action, the Class Members will recover the statutory maximum without undergoing the burden of bringing individual lawsuits. This is substantially more than the results obtained in most other TCPA class action settlements. *See e.g.*, *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 3087073, at *3 (W.D. Wash. May 31, 2016) (approving settlement under which each eligible Settlement Class Member is likely to receive approximately $150); *Estrada v. iYogi, Inc.*, No. 2:13-01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members were estimated to receive $40); *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 3:10-CV-1777-AJB-NLS, 2012 WL 3991734, at *3 (S.D. Cal. Aug. 27, 2012) (approving settlement where class members received $70), *report and recommendation adopted,* No. 10CV1777 AJB NLS, 2012 WL 3809123 (S.D. Cal. Sept. 4, 2012).

b. The Litigation Risks of Undertaking this Action Support the Requested Fee.

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046–47 (N.D. Cal. 2008); *see* also *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) (risk of dismissal or loss on class certification is relevant to evaluation).

Here, there were factual issues that created a real risk that the Court would refuse class certification. (*See* Order [re Class Cert.], ECF No. 168 (requiring an evidentiary hearing on ascertainabilitly, commonality, and typicality).) In particular, the ability to prove consent is a hurdle that cannot always be cleared in TCPA actions. *Compare Meyer v. Portfolio Recovery Assoc's*, 707

[5] Although the TCPA would allow a larger award if actual monetary losses exceeded $500.00, none of the members of the Settlement Class are likely to be able to establish sufficient loss under these facts.

F.3d 1036, 1042 (9th Cir. 2012) (upholding class certification) *with Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008) (reversing class certification). Although discovery has provided Plaintiff with sufficient evidence to allow it to satisfy each of the prerequisites to class certification, the ability to meet this requirement was uncertain at the time the case was filed.

Additionally, Class Counsel bore the risk of an adverse verdict at trial or a risk that Defendants would not be able to satisfy any judgment. Finally, courts in other jurisdictions have reduced class action judgments based on statutory damages on due process grounds even after a plaintiff has prevailed on the merits. *See, e.g., Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) ("[T]he potential for devastatingly large damages awards, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues"); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 350-351 (N.D. Ill. 2002) (declining to certify a class where it "could result in statutory minimum damages of over $19 billion, which is grossly disproportionate to any actual damage").

c. <u>The Degree of Skill Required and the Quality of the Work Performed Support the Requested Fee.</u>

The "prosecution and management of a complex [ ] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047.

As demonstrated by the supporting declarations of Dennis L. Kennedy and George Haines (as well as the overwhelmingly positive outcome), Class Counsel are experienced litigators who have specialized knowledge and experience in litigating class actions. (Ex. 1, Kennedy Decl. ¶ 13(a)-(c); Ex. 1-C, Curriculum Vitae of Dennis L. Kennedy; Ex. 2, Declaration of David H. Krieger ["Krieger Decl.", ¶ 11(a)-(c).) Class Counsel successfully defeated Defendants' Motions for Summary Judgment, conducted extensive written discovery, took and defended numerous depositions, and navigated numerous complex legal and factual issues against a very aggressive and well-funded defendant. (*See* Ex. 1-A, Bailey❖Kennedy Billing Entries; Ex. 2-A, Haines & Krieger Billing Entries.) Finally, Class Counsel was able to negotiate a very favorable settlement on behalf of the class.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Class Counsels' noteworthy performance has more than demonstrated that they possess the high level of skill required by an action of this complexity. Given the circumstances, a multiplier is warranted. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (affirming enhanced fee where counsel "pursued this case in the absence of supporting precedent" and "against [defendant's] vigorous opposition throughout the litigation").

d. The Undertaking of this Action on a Contingency Fee Basis Supports the Requested Fee.

Courts, including the Ninth Circuit, recognize that the public interest is served by rewarding attorneys who assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all for their work. *In re Washington Pub. Power*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose"); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

Here, Class Counsel prosecuted this matter on a contingent basis—agreeing to advance all necessary expenses while knowing that Class Counsel would receive a fee only if there was a recovery. In pursuit of this litigation, Class Counsel both committed the resources of their firms to litigating this matter through all motion and discovery issues, and through trial, if necessary, not knowing a relatively early settlement would occur.

During the course of this action, the firms have spent considerable time, resources, and money by, among other things: (1) investigating the action; (2) conducting legal research relating to the alleged claims; (3) conducting discovery, including written discovery and multiple depositions of Defendants' representatives and Mr. Grider; (4) negotiating the settlement over a period of months; and (5) preparing the preliminary approval brief and supporting filings. Class Counsel expended these resources despite the risk that Class Counsel would never be compensated at all. Thus, Class

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Counsel's "substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees" in this matter. *Omnivision*, 559 F. Supp. 2d at 1047.

Also, Class Counsels' commitment to required them to forego other opportunities. Specifically, Bailey❖Kennedy has declined to accept certain prospective clients due to their representation of Plaintiffs and the time required by this Matter—Class Counsel referred a defendant in a TCPA action to Defendants' counsel due to the potential for a conflict of interest. Class Counsels' devotion to this matter in lieu of other opportunities supports the requested fee award.

e. The Requested Fee Comports with Fees Awarded in Similar Actions.

The fee requested is well within the range commonly awarded in TCPA class actions. Courts often approve fee awards of 33% in TCPA class actions. *See Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, *4 (D. Mont. Feb. 11, 2015) (granting an attorney fee equal to 33% of the fund due to the "extraordinary" results of the settlement in which class members would receive up to $500 per TCPA violation); *Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, No. 09 C 5601, 2015 WL 4498741, at *2 (N.D. Ill. July 23, 2015) (awarding 33% of common fund in TCPA class action); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1208 (C.D. Cal. 2014) (awarding attorneys' fees of "$1.1 million, which represents 33% of the ceiling on the $3.3 million settlement fund"); *Kwan v. Clearwire Corp.*, No. 2:09-cv-01392-JLR, (W.D. Wash. May 6. 2013) (awarding $2.9 million in attorneys' fees totaling 41% of monetary award of up to $7 million); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413-W-AJB (S.D. Cal. Jan. 5, 2009) (approving attorneys' fees totaling 31.5% of the total settlement fund).

In sum, as evidenced by analysis of the factors enumerated by the Ninth Circuit, Class Counsel's fee request is reasonable and fair under the "percentage of the fund" method. *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming attorney's fees award representing 33% of settlement fund).

***4. The Attorney's Fees Requested are also Justified Using the Lodestar Method.***

Courts have "discretion to use the lodestar method or the percentage of the fund method in common fund cases." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (internal quotation

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

marks omitted). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016). Additionally, the court may adjust that figure based upon its consideration of many of the same "enhancement" factors considered in the percentage-of-the fund analysis, such as: (1) the results obtained; (2) whether the fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of other employment due to acceptance of the case; and (5) the experience, reputation, and ability of the attorneys. See *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).

Adjustment by using a "[r]isk multipliers incentivize[s] attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016). "[W]hen (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky" it is an abuse of discretion to refuse to apply a risk multiplier. *Id.* (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1005 (9th Cir. 2002)).

a. The Lodestar Amount is Reasonable.

In determining the reasonableness of a fee request, courts should generally "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1111 (9th Cir. 2014) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)), cert. denied, 135 S. Ct. 295 (2014). Additionally, "[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110 (9th Cir. 2014) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990)).

In this case, the declarations of Class Counsel and attached exhibits clearly identify the hours worked and the billing rates of each attorney or legal professional. (Ex. 1, Kennedy Decl. ¶¶ 13-25;

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Ex. 1-A, Bailey❖Kennedy Billing Entries; Ex. 2, Krieger Decl. ¶¶ 11-14; Ex. 2-A, Haines & Krieger Billing Entries.[6]) Through January 2017, Bailey Kennedy has incurred $943,008 in attorneys' fees for 3,329.55 hours of work, (Ex. 1, Kennedy Decl. ¶ 9; Ex. 1-A, Bailey❖Kennedy Billing Entries), and Haines and Krieger has incurred $218,943 for approximately 488 hours of work. (Ex. 2, Krieger Decl. ¶ 7; Ex. 2-A, Haines & Krieger Billing Entries.) In addition, Class Counsel expects to spend an additional 190 hours before this action is fully resolved. (Ex. 1, Kennedy Decl. ¶ 12 (estimating an additional 175 hours totaling $54,690 in attorney's fees); Ex. 2, Krieger Decl. ¶ 10 (estimating an additional 15 hours totaling $6,750 in attorney's fees). As evident from Class Counsel's detailed declarations and billing entries, they prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work. Tasks were appropriately allocated among the lawyers who worked on the case based on their level of experience. Additionally, Class Counsel's contemporaneous time records were carefully reviewed for accuracy and appropriateness of time spent on individual tasks.

Further, as detailed above and in the Motion for Preliminary Approval, this matter involved complex legal questions and substantial risk. Specifically, the state of the law with respect to the TCPA continues to be in flux. Indeed, multiple rulings were made by the Federal Communications Commission during the pendency of the matter which could have affected the outcome.

Additionally, Bailey❖Kennedy was precluded from taking on other employment as a result of this matter. Specifically, Bailey❖Kennedy was forced to decline a matter in which the firm had been asked to defend against a TCPA class action—the matter was referred to opposing counsel given their vigorous defense of this matter. (Ex. 1, Kennedy Decl. ¶ 9(c).)

Finally, Class Counsel's hourly rates are reasonable in light of each individual's level of experience and the prevailing practices of the Las Vegas legal market. Class Counsel consists of highly skilled lawyers who have demonstrated admirable proficiency in class actions and complex

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

[6] For the sake of brevity, this information is summarized. However, Class Counsel's time is detailed in the attached declarations and billing records.

litigation. Additionally, the lead attorneys at each firm have specialized knowledge and experience in class actions.

b. A Multiplier of 2.25 is Warranted Under the Circumstances.

Courts regularly approve attorney fee awards in TCPA class action settlements that reflect a multiplier of 2.5 or greater. *See, e.g.*, *Kwan v. Clearwire Corp.*, No. 2:09-cv-01392-JLR, (W.D. Wash. May 6. 2013) (applying a multiplier of 2.77 and awarding $2.9 million in attorneys' fees); *Adams v. AllianceOne, Inc.*, 08–CV–248–JAH (S.D. Cal. Sept. 28, 2012) (granting requested attorneys' fees using a multiplier of 3.81); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (approving attorneys' fees using a multiplier of 4.3); *Arthur v. Sallie Mae, Inc.*, No. 10–CV–198–JLR (W.D.Wash. Nov. 16, 2010) (granting a request for attorney's fees that reflected a multiplier of 2.59); *see also* Newberg, Attorney Fee Awards, § 14.03 at 14–5 (1987) ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.").

Here, the attorney's fees requested by Class Counsel reflect a multiplier of 2.25. Under the circumstances of this case—which include the excellent monetary relief obtained for the Class, the high risk with continued litigation, the contingent nature of the fee, the arm's length nature of settlement negotiations, and the skill and experience of Class Counsel in litigating TCPA class actions as set forth above—a significant multiplier is well justified. *See Kerr*, 526 F.2d at 70; see also *In re Washington Pub. Power,* 19 F.3d at 1299-1300 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" in accord with the "established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases.").

Finally, as discussed above, Class Counsel estimates that they will spend another 190 hours before this case is fully resolved. Class Counsel's fees quoted in this Motion are calculated through January 31, 2017. However, Class Counsel has already spent approximately 90 hours in the month of February in drafting the Motion for Final Approval, this Motion, the Joint Brief of the Parties, and addressing other issues. Thus, the multiplier will decrease as the case comes to a conclusion.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

In sum, utilizing either the percentage-of-the-fund method or the Lodestar method, the amount of attorney's fees requested are fair, reasonable, and adequate to all concerned. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942. Indeed, that the attorney's fees requested are the result arms-length negotiations—including three mediations. *See Hanlon*, 150 F.3d at 1029 (holding courts may rely upon the mediation proceedings "as independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class.").

**B. The Requested Costs are Fair and Reasonable.**

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation).

Here, Class Counsel seeks to recover $31,629.61 in costs and expenses. The litigation costs and expenses incurred in this action for which reimbursement is sought from the Settlement Fund are detailed in the attorney declarations filed herewith. (Ex. 1-B, Bailey❖Kennedy Costs.) These costs and expenses were necessary to secure the resolution of this litigation and were paid without any assurances that they would ever be repaid.

**C. Plaintiff's Incentive Award is Reasonable.**

Incentive awards "are well established in class actions as compensation for a named plaintiff's often extensive involvement in the litigation." *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1332 (D. Nev. 2014). The relevant factors in analyzing the reasonableness of an incentive award are: (1) "the actions the plaintiff has taken to protect the interests of the class," (2) "the degree to which the class has benefitted from those actions," and (3) "the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Courts often approve incentive awards of $10,000 or greater. *See e.g.*, *Hageman v. AT & T Mobility LLC*, CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (finding

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

requested incentive award of $20,000 to be fair, reasonable and appropriate); *Sobel*, 53 F. Supp. 3d at 1332 (approving incentive award of $10,000); *see also Martin v. AmeriPride Servs., Inc.*, No. 08CV440-MMA JMA, 2011 WL 2313604, at *9 (S.D. Cal. June 9, 2011) (approving incentive award of $18,500).

Here an incentive award of $10,000 for Mr. Grider is reasonable under the circumstances. Mr. Grider has been an active participant in the litigation and has fairly represented the interests of the Settlement Class Members. (Ex. 3, ¶ 5.) Indeed, Mr. Grider has devoted a substantial amount of time and effort in litigation in his capacity as class representative, including:

- Reviewing numerous pleadings, motions, orders, and other documents;
- Participating in two meetings to prepare for his deposition;
- Preparing for and participating in his deposition;
- Participating in numerous discussions with Class Counsel regarding case status and strategy;
- Preparing for, attending, and participating in the mediation facilitated by the Honorable Lawrence R. Leavitt (Ret.) on January 6, 2015; and
- Preparing for, attending, and participating in the Judicial Settlement Conference facilitated by the Honorable Carl W. Hoffman on June 19, 2015.

(*Id.* ¶ 6.) Further, Mr. Grider took on financial risk, in the form of potential liability for attorney's fees and costs, in order to serve as the class representative. (*Id.* ¶ 4.) Finally, Mr. Grider's efforts have led to a direct benefit to the Settlement Class Members: a recovery equal to the ***maximum*** amount of damages allowed by the TCPA.

In sum, given Mr. Grider's superior efforts—which, in conjunction with the efforts of Class Counsel have led directly to a remarkable recovery for Settlement Class Members—should be awarded accordingly. *See Sobel*, 53 F. Supp. 3d at 1332; *see also Martin*, No. 08CV440-MMA JMA, 2011 WL 2313604, at *9.

## VI. CONCLUSION

In sum, the requested attorney's fees, costs and expenses, and incentive award are fair, reasonable, and adequate to all concerned. Mr. Grider and Class Counsel were able to obtain a phenomenal result for Settlement Class Members who submitted a valid claim—$1500, the

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

***maximum*** amount of damages provided by the TCPA. Indeed, the amount of the attorney's fees, costs and expenses, and incentive are the product of extensive arms-length negotiations by the Parties, with substantial assistance by Magistrate Judge Hoffman and Judge Leavitt (Ret.).

Accordingly, Plaintiff respectfully requests that the Court award Class Counsel $2,608,370.39 in attorney's fees and $31,629.61 in costs and expenses, and award Mr. Grider $10,000 as an incentive award.

DATED this 14th day of February, 2017.

BAILEY❖KENNEDY

By: /s/ Dennis L. Kennedy
DENNIS L. KENNEDY
JOSHUA M. DICKEY
KELLY B. STOUT
PAUL C. WILLIAMS

GEORGE H. HAINES
DAVID H. KRIEGER
HAINES & KRIEGER
*Attorneys for Plaintiffs*

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

## CERTIFICATE OF SERVICE

I certify that I am an employee of BAILEY❖KENNEDY and that on the 14th day of February, 2017, service of the foregoing Motion for Award of Attorney's Fees, Costs and Expenses, and for Incentive Award to Class Representative Ronald Grider was made by mandatory electronic service through the United States District Court's electronic filing system and/or by depositing a true and correct copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last known address:

| | |
|---|---|
| PATRICK J. REILLY<br>**HOLLAND & HART LLP**<br>9555 Hillwood Drive<br>Second Floor<br>Las Vegas, Nevada 89134 | Email: PReilly@HollandHart.com<br><br>*Attorneys for Defendants* |
| HOLLY STEIN SOLLOD<br>KATHLEEN KRAMER CUSTER<br>C/O **HOLLAND & HART LLP**<br>9555 Hillwood Drive<br>Second Floor<br>Las Vegas, Nevada 89134 | Email: HSteinSollod@HollandHart.com<br>KKCuster@HollandHart.com<br><br>*Attorneys for Defendants* |
| KELLY H. DOVE<br>**SNELL & WILMER**<br>3883 Howard Hughes Parkway<br>Suite 1100<br>Las Vegas, Nevada 89169 | Email: KDove@swlaw.com<br><br>*Attorneys for Nevada Collectors Association* |

/s/ Paul C. Williams
Employee of BAILEY❖KENNEDY

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820